**AMALGAMATED TRANSIT UNION, DIVISION 1384 and the Amalgamated Council of Greyhound Divisions, AFL–CIO, Plaintiffs and Appellees,**

v.

**GREYHOUND LINES, INC., a corporation, Defendant and Appellant.**

No. 75–2776.

United States Court of Appeals, Ninth Circuit.

Jan. 30, 1976.

David M. Heilbron (argued), of McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendant and appellant.

Peter D. Nussbaum (argued), of Brundage, Neyhart, Beeson & Tayer, San Francisco, Cal., for plaintiffs and appellees.

### OPINION

Before HUFSTEDLER, KILKENNY and SNEED, Circuit Judges.

SNEED, Circuit Judge:

Appellant Greyhound Lines, Inc. (Greyhound) appeals the issuance of a preliminary injunction under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, on behalf of the Amalgamated Transit Union, Division 1384, AFL–CIO, and the Amalgamated Council of Greyhound Divisions, AFL–CIO (Union). We affirm.

Greyhound notified the Union on April 17, 1975 that effective June 25, 1975 it planned to change the work cycles of bus drivers operating the Vancouver-Seattle and Seattle-Portland runs from their existing cycles of six days on, three days off, and four days on, three days off, respectively, to a straight weekly regimen of five days on and two days off. The Union objected, arguing that such a change could not be made unilaterally under the terms of the collective bargaining agreement (agreement). Greyhound responded that its action was authorized.[1] On May 22, 1975 the Union requested, in writing, immediate arbitration and maintenance of the status quo pending arbitration. Greyhound agreed to immediate arbitration but refused to refrain from making the scheduled changes pending arbitration. Rather than proceed to arbitration, the Union petitioned the federal district court to enjoin Greyhound from implementing the changes pending resolution of the matter through arbitration.

In its order granting the Union's petition for a preliminary injunction the district court indicated that to obtain a preliminary injunction the Union was not required to make "[a] showing of some likelihood of ultimate success", as suggested in *Hoh v. Pepsico, Inc.*, 491 F.2d 556, 561 (2d Cir. 1974). The court found the proper standard to be that the Union show that the position it would assert in arbitration was not "plainly without merit". Both of these "standards" are

---

1. The dispute concerns the interpretation of the following sections of the agreement:

   § 43. RUN SET UPS—Insofar as possible, regular runs will be assigned five (5) days per week or ten (10) days in fourteen (14) days. This section can be modified to conform to local conditions upon written mutual consent by the Union and the Company.

   \* \* \* \* \* \*

   § 100. EXISTING COMPANY RULES—It is agreed that all existing rules and regulations relating to the operation and conduct of Company's business not in conflict with provisions of this Agreement shall remain in effect until superseded or changed by subsequent rules and regulations not in conflict with this Agreement. The Company agrees that they will not change any rule or regulation that affects the employees beneficially without mutual agreement.

phrases found in the same paragraph of the opinion in *Hoh v. Pepsico, Inc., supra.*[2] The district court held that the Union's position which it would assert in arbitration was "not plainly without merit." Moreover, it found that a denial of the preliminary injunction would harm the Union more than Greyhound would suffer from its being granted, and that Greyhound's work cycle changes would cause irreparable injury to the Union and at least some of its members.

As a result of these findings of fact and conclusions of law the district court enjoined Greyhound from implementing the proposed changes pending a decision by arbitration and conditioned the issuance of the injunction upon the Union "giving security, approved by the Court or the Clerk of the Court, in the sum of ten thousand dollars ($10,000) for payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained by this preliminary injunction."

Greyhound moved to increase the amount of the bond, to require it to cover attorneys fees, and to require that the bond be conditioned so that payment on it would be called for upon an arbitration award in favor of Greyhound. The lower court raised the bond to $15,000

but denied Greyhound's motion in all other respects.

Greyhound makes the following arguments in this appeal: (1) the proper showing for the issuance of a preliminary injunction pursuant to § 301 of the LMRA is a "reasonable likelihood of success", not a showing that a claim is not "plainly without merit"; (2) having to work a five day week for compensation is, contrary to the lower court's finding, not irreparable injury; (3) regardless of the merits of the issuance of the injunction, the amount of the bond set was inadequate; (4) the bond should have been conditioned to call for payment on the Union's losing on the merits before the arbitrator; (5) the bond should have covered attorneys fees incurred by Greyhound in defending against the injunction as provided in § 7 of the Norris LaGuardia Act,[3] 29 U.S.C. § 107.

### I.

### Showing Necessary For A Section 301 Injunction.

■ In *Boys Markets, Inc. v. Retail Clerks Union Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) the Supreme Court recognized that, notwithstanding the anti-injunction provisions of the Norris LaGuardia Act,[4] 29 U.S.C. 101

2. This paragraph of *Hoh* reads as follows:

"Furthermore, the 'ordinary principles of equity' referred to as a guide in the portion of the Sinclair dissent that was approved in *Boys Markets* include some likelihood of success. At least this much is required by Judge Frank's liberal formulation in *Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2 Cir. 1953). We think this must mean not simply some likelihood of success in compelling arbitration but in obtaining the award in aid of which the injunction is sought. Although courts have been directed by the Steelworkers' Trilogy, 363 U.S. 564, 574, 593, 80 S.Ct. 1343, 1347, 1358, 4 L.Ed.2d 1403, 1409, 1424 (1960), to be liberal in construing agreements to arbitrate, this instruction does not extend to the grant of ancillary relief; on such a matter they must continue to exercise the sound discretion of the chancellor. It would be inequitable in the last degree to grant an injunction pending arbitration which was costly to a defendant on the basis of a claim which although arguably

arbitrable was plainly without merit." 491 F.2d at 561.

3. Section 7 provides in pertinent part:

No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court.

4. Section 4 of the Norris LaGuardia Act provides in part:

No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any

et seq., injunctive relief under section 301 of the Labor Management Relations Act[5] is available when (1) the collective bargaining agreement contains a mandatory arbitration clause, (2) the underlying dispute is arbitrable, (3) the party seeking the injunction is ready and willing to arbitrate, and (4) injunctive relief is warranted under ordinary principles of equity.[6]

Greyhound's initial contention is that under the circumstances of this case injunctive relief is *not* warranted under the ordinary principles of equity. It admits that in all other respects the conditions established in *Boys Markets* have been met. More particularly, Greyhound argues the ordinary principles of equity require that the Union establish that there is a "reasonable likelihood of success" in having its position in the arbitration proceedings accepted by the arbitrator. Presumably Greyhound's position is derived from those authorities which hold that the issuance of a preliminary injunction in an ordinary case requires a showing by the party seeking relief that there is a reasonable probability that he ultimately will prevail on the merits. *See* 7 Moore's Fed.Practice ¶ 65.-04[1]. Rule 65, Fed.R.Civ.P., normally embraces such a requirement.

■ The district court was correct in rejecting this contention by Greyhound. The *Steelworkers' Trilogy,* 363 U.S. 564, 574, 593, 80 S.Ct. 1347, 4 L.Ed.2d 1409, by emphasizing the importance of arbitration to stable labor-management rela-

tions, indicate that an effort to obtain a preliminary injunction to compel arbitration stands on a somewhat different footing than does an effort to secure an injunction in the ordinary case. The importance of arbitration justifies a partial lowering of the barrier to obtaining the injunction.[7]

The *extent* to which the barrier should be lowered in a case involving an effort to obtain a preliminary injunction to maintain the status quo pending arbitration is a difficult matter. The district court appears to have believed that a standard of "some likelihood of success", as that phrase was used in the paragraph of *Hoh* set forth in the margin,[8] is higher than the standard "plainly without merit" also appearing in the quoted paragraph. That Judge Friendly, the author of the paragraph, intended barriers of different height is by no means clear. A reasonable interpretation is that "plainly without merit" is the negative form of a standard, the affirmative form of which is "some likelihood of success". Under this view Judge Friendly was merely illustrating the standard "some likelihood of success" when he described the inequity of issuing preliminary injunctions pending arbitration when the petitioner's claims in arbitration were "plainly without merit."

■ In our view it is not necessary for us to resolve this dispute about what Judge Friendly meant. We hold that a plaintiff, without regard to whether he is the employer or the union, seeking to

---

case involving or growing out of any labor dispute to prohibit any person or persons participating or interested in such dispute . . . from doing, whether singly or in concert, any of the following acts:

\* \* \* \* \* \*

5. Section 301 of the LMRA (29 U.S.C. § 185(a)) provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount of the controversy or

without regard to the citizenship of the parties.

6. *See generally,* Note, *Federal Labor Policy and the Scope of the Prerequisites for a Boys Markets Injunction,* 19 St. Louis L.J. 328 (1975).

7. Adjustments of the barrier have occurred in other settings. *See, e. g., Carter-Wallace, Inc. v. Davis-Edwards Pharmacal Corp.,* 443 F.2d 867, 871 (2d Cir. 1971) (injunction pendente lite in patent suit unavailable except when patent is beyond question valid and infringed).

8. *See* note 2, *supra.*

maintain the status quo pending arbitration pursuant to the principles of *Boys Markets* need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor. If there is a genuine dispute with respect to an arbitrable issue, the barrier we believe appropriate has been cleared.

Although the standard "not plainly without merit" employed by the district court differs in focus from that which we have enunciated, our review of the record convinces us that in this case arbitration will not be a futile endeavor and that a genuine dispute with respect to an arbitrable issue exists. Moreover, we are mindful that the issuance of a preliminary injunction inescapably involves the exercise of discretion by the trial court and should not lightly be disturbed on appeal. *See* 7 Moore's Fed. Practice, ¶ 65.04[2], 65–49.

### II.
### Irreparable Injury.

It is obvious that a lowering of the barrier regarding the showing that a plaintiff must make with respect to the merits of the controversy serves to increase the intensity of disputes between the plaintiff and defendant regarding the scope of the injury that either granting the injunction will impose on the defendant or denying it will thrust upon the plaintiff. This increased intensity provides a strong reason why we embrace the position that section 7 of the Norris LaGuardia Act, insofar as it precludes the issuance of a temporary or permanent injunction "except after hearing the testimony of witnesses in open court", is applicable to proceedings to obtain preliminary injunctions pursuant to section 301 of the Labor-Management Relations Act. In this we join an impressive array of authorities. *See Hoh v. Pepsico, Inc.,* 491 F.2d 557 (2d Cir. 1974); *United States Steel Corp. v. United Mine Workers of America,* 456 F.2d 483 (3d Cir. 1972); *Detroit Newspaper Publishers Ass'n v. Detroit Typographi-*

*cal Union,* 471 F.2d 872, 876 (6th Cir. 1972), *cert. denied,* 411 U.S. 967, 93 S.Ct. 2149, 36 L.Ed.2d 687 (1973); *Emery Air Freight Corp. v. Local Union 295,* 449 F.2d 586, 588–89 (2d Cir. 1971), *cert. denied,* 405 U.S. 1066, 92 S.Ct. 1500, 31 L.Ed.2d 796 (1972). We recognize, of course, that there may be circumstances where the undisputed facts so clearly indicate that injunctive relief is necessary that "hearing the testimony of witnesses in open court" would be useless. Such circumstances did not exist in this case and probably will exist only infrequently. It follows that the trial court acted properly in conducting a hearing in which the testimony of witnesses was received in open court.

We also hold, and for like reasons, that the requirement of section 7 of Norris LaGuardia that there be a finding of fact "that as to each item of relief granted greater injury will be inflicted upon the complainant by the denial of relief than will be inflicted upon defendants by the granting of relief" is applicable to efforts to obtain a *Boys Markets* injunction pursuant to section 301 of the LMRA. Quite properly the district court recognized this obligation and made such findings. We cannot say that its finding "that not enjoining Greyhound from implementing the schedule changes pending arbitration would harm plaintiffs much more than issuing the injunction would harm Greyhound" is clearly erroneous.

It is, of course, also necessary that a plaintiff show that the denial of the preliminary injunction will cause irreparable injury to him. *See Boys Markets, Inc. v. Retail Clerks Union Local 770, supra,* 398 U.S. at 254, 90 S.Ct. 1583, *cf.* Norris LaGuardia Act, section 7(b), 29 U.S.C. § 107. The district court in this case made such a finding and, although we adjure trial courts not to treat inconvenience to a few union members as the irreparable injury required by ordinary principles of equity, we are not prepared to say that this finding is clearly erroneous, or that the issuance of the preliminary injunction was an abuse of discre-

tion. Our reminder to treat "irreparable injury" as a meaningful requirement springs from our awareness that eliminating any requirement to show probable success in the arbitration proceedings increases accessibility to preliminary injunctions and, in the type of case here before us, further limits the opportunity of the employer to make changes in work rules pending arbitration. Maintenance of the status quo in all cases pending arbitration may be bargained for by the union and agreed to by the employer. Its equivalent should not be derived from *Boys Markets*. Treating irreparable injury as a significant requirement, even when the union is the plaintiff seeking the injunction, will tend to preclude this result.

### III.

#### The Conditions of the Bond.

Greyhound's contention that the bond should have been conditioned to call for payment on the Union's losing on the merits before the arbitration is not supported by authority. Surety bonds required by reason of Rule 65(c), Fed.R.Civ.P., are conditioned on "payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." This means what it says. As Moore puts it, "Recoverable damages under the bond are those that are directly attributable to the restraining order or injunction, as the case may be, and which are incurred or suffered by a party as a result of the wrongful restraint, and does not include damages occasioned by the suit independently of an injunction granted therein." 7 Moore's Fed.Practice, ¶ 65.10[1], 65–96, 97. Wright and Miller are in accord. 11 Wright & Miller, Federal Practice and Procedure, § 2973 (1973).

The pertinent language of section 7(e) of the Norris LaGuardia Act is not significantly different from that of Rule 65(c). It provides that the amount of the bond shall be sufficient "to recompense those enjoined for any loss, expense, or damage caused by the improvi-

dent or erroneous issuance of such an order or injunction." We agree with the court in *United States Steel Corporation v. United Mine Workers of America, supra* at 488, when it held that the bond in a *Boys Markets* proceeding was payable "only if the preliminary injunction is found to have been improvidently or erroneously issued, that is, where the court did not hold a proper hearing or failed to make the factual determinations mandated by Part V of the *Boys Markets* opinion or where the court erroneously issued a preliminary injunction over a labor dispute not covered by the contract grievance-arbitration provision." To accept Greyhound's contention that the bond should be payable in the event it wins the arbitration would fly in the face of our earlier holding that a showing by the plaintiff of probable success in the arbitration is not necessary to obtain a *Boys Markets* preliminary injunction.

We, however, do believe that Greyhound is correct in asserting that the bond could embrace reasonable attorneys fees as a part of the costs secured. Such fees are permitted under section 7(e) of the Norris LaGuardia Act and also were permitted by the court in *United States Steel Corporation v. United Mine Workers of America, supra* at 488, at the request of the union in a *Boys Markets* proceeding. The union suggests that *Mine Workers* be read to limit inclusion of reasonable attorneys fees to instances in which a union is being enjoined. Although it is well-known history that the Norris LaGuardia Act was enacted to protect labor from anti-labor courts, we decline to use that history to justify an uneven-handed treatment of reasonable attorneys fees incurred in defending against an erroneous issuance of a preliminary injunction.

Nonetheless, having held that the preliminary injunction was properly issued the failure of the bond to include reasonable attorneys fees in this case imposed no injury or hardship on Greyhound.

Affirmed.