618 F.2d 111
 88 Lab.Cas. P 11,959
 Unpublished Disposition
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Chicago Typographical Union No. 16, Plaintiff-Appellant
v.
Chicago Newspaper Publishers' Association et al. Defendants-Appellees.
 No. 79-1336.
 United States Court of Appeals, Seventh Circuit.
 Feb. 5, 1980.*
 
 1
 Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and GRANT, Senior District Judge.**
 
 
 2
 GRANT, Sr. D.J.
 
 
 3
 This case involves an award of attorney fees for expenses incurred in defense against a temporary restraining order and a requested preliminary injunction in a labor dispute stemming from the decision of Field Enterprises, Inc., ("Field"), to cease publication of the Chicago Daily News on March 4, 1978. Certain composing room employees, represented by the plaintiff, ("the Union"), were subject to a job security agreement which provided for arbitration of the question of the proper number of composing room employees to be laid off as a result of the termination of publication of the Daily News. In accordance with the contract, Field and the Union did submit this issue to binding arbitration. Prior to the issuance of the award on the layoff issue, Field was faced with the dilemma of managing its operation with a large number of employees rendered unnecessary as a result of the demise of the Daily News. Field elected to "furlough" approximately 60 composing room employees by giving them time off from work with full benefits. The Union objected to the furlough and on March 29, 1978, filed a complaint and motion for a TRO in the district court seeking to prevent the furlough. The complaint alleged violation of the contract and further alleged that the furlough was motivated by an attempt to suggest a number of employees who should be laid off, such layoff issue then being before an arbitrator. The motion for TRO came before Judge Will, sitting as an emergency judge, on Thursday, March 30, 1978. After expressing reluctance over the merits of plaintiff's case, Judge Will nevertheless granted a TRO effective until Judge McGarr returned to the bench on Monday, April 3, 1978, stating, "I don't see how the Union would have any damage with respect to the status quo not being preserved but, be that as it may, I am going to preserve the status quo." (App. 45.)
 
 
 4
 At a hearing held on April 5, 1979, Judge McGarr dissolved the restraining order and denied a motion for preliminary injunction, holding that the district court did not have jurisdiction to issue a TRO. In its Memorandum Opinion of April 20, 1979, the court below reasoned that it lacked jurisdiction to equitably intervene in the controversy pending a decision of an arbitrator; that in addition to the appointment of an arbitrator to consider the underlying layoff issue, a second arbitrator was in the process of being selected to specifically address the furlough issue; and finally that the anti-injunction provision of the Norris-LaGuardia Act, 29 U.S.C. Sec. 104, preserves agreed-upon arbitration as the sole method of resolving disputes of the type before the court. The Union then filed a notice of appeal in this court seeking reversal of Judge McGarr's order denying its preliminary injunction. On May 12, 1978, the arbitrator, faced with deciding the layoff dispute, issued his ruling to the effect that up to 75 of the then existing 324 composing room employees could be permanently laid off as a consequence of the closing of the Daily News. On October 30, 1978, the second arbitrator issued his decision dismissing the Union's grievance and upholding Field's right to furlough the employees in this case, finding that the contractual status quo provision was properly observed by continuing the employees on the payroll. Apparently as a consequence of the second arbitrator's decision, the Union requested dismissal of the appeal of Judge McGarr's ruling on the preliminary injunction, and such dismissal was granted on November 22, 1978. On December 28, 1978, Field filed in the district court a motion for costs and attorney fees pursuant to Section 7 of the Norris-LaGuardia Act, 29 U.S.C. Sec. 107. Judge McGarr granted the motion, finding that Section 4 of the Norris-LaGuardia Act prohibited the TRO issued by Judge Will, and stated in part:
 
 
 5
 The court notes that plaintiff has in the past sought other such "status quo injunctions" pending arbitral decisions. Chicago Typographical Union No. 16 v. Chicago Newspaper Publishers' Ass'n., No. 74 C 2609 (N.D.Ill.1974); Chicago Typographical Union Local No. 16 v. Hammond Publishers, Inc., No. 73 H 167 (N.D.Ind.1973). In each instance other than the case at bar, the plaintiff was unsuccessful, given the prohibition of the Norris-LaGuardia Act. Thus, it appears that plaintiff persists in seeking relief to which it is not entitled. Therefore, the court finds an award of fees is necessary to reimburse defendants for the costs of defending a suit seeking relief which plaintiffs should have known was unavailable.
 
 
 6
 On March 15, 1979, the present appeal was initiated, asserting that it was error for the court below to award $2,500 in attorney fees.
 
 
 7
 The Norris-LaGuardia Act, 29 U.S.C. Sec. 101 et seq., prohibits federal court jurisdiction to issue injunctions in peaceful labor disputes over arbitrable grievances, except for those situations addressed in Boys Markets, Inc. v. Retail Clerks Local 770, 398 U.S. 235 (1970). In Boys Markets it was held that a federal district court, subject to traditional equitable considerations, may enjoin a strike concerning a grievance which the parties are contractually bound to arbitrate in order to enforce the arbitration promise of the parties. The Court specifically described the Boys Markets exception to the Norris-La-Guardia Act as "a narrow one". 398 U.S. at 253. In Buffalo Forge v. United Steelworkers, 428 U.S. 397 (1976), the Court further delineated the boundaries of the Boys Markets exception by holding that an employer could not obtain injunctive relief in sympathy strike situations since "the strike had neither the purpose nor the effect of denying or evading an obligation to arbitrate ..." 428 U.S. 408. The Buffalo Forge Court held that unless the arbitration process is directly threatened by economic coercion, injunctive relief is outside the Boys Markets exception to the Norris-LaGuardia Act and then stated:
 
 
 8
 [A]side from the enforcement of the arbitration provisions of such contracts, within the limits permitted by Boys Markets, the Court has never indicated that the courts may enjoin actual or threatened contract violations despite the Norris-LaGuardia Act. In the course of enacting the Taft-Hartley Act, Congress rejected the proposal that the Norris-LaGuardia Act's prohibition against labor-dispute injunctions be lifted to the extent necessary to make injunctive remedies available in federal courts for the purpose of enforcing collective-bargaining agreements.
 
 
 9
 428 U.S. 397 (1976).
 
 
 10
 In the case at bar, the Union should not have been permitted a status quo injunction on the premise that a clause in the collective bargaining agreement required maintenance of the status quo. A threat to the arbitration process has not been demonstrated. Although the Union repeatedly asserts that Field refused to submit the furlough issue to arbitration, Judge McGarr specifically noted in his April 20, 1978, order than an arbitrator was in the process of being selected to address solely the furlough issue. The proper forum for the Union to argue violation of the status quo clause of the contract was the arbitration proceeding. We agree with Field's reasoning that even if it had refused to arbitrate, the Union's cause of action should simply have been a suit to compel arbitration rather than a suit to enjoin defendant from taking a proposed action pending arbitration.
 
 
 11
 In Detroit Newspaper Publishers' Ass'n. v. Detroit Typographical Local 18, 471 F.2d 872 (6th Cir.1972), cert. denied 411 U.S. 967 (1973), the Sixth Circuit confronted the issue of determining the propriety of "status quo" injunctions. In reversing a district court injunction prohibiting the employer from installing certain electronic editing equipment pending arbitration over the employer's right to take such action, the court held that the construction of the agreement's "status quo" clause was a matter for an arbitrator and not the court.
 
 
 12
 In addition, the Union here has not made a convincing showing of irreparable injury. Allegation of the loss of monetary or vacation benefits does not constitute irreparable harm in that the adequate legal remedy of damages is available. Finally, the propriety of the TRO is further reduced by the failure to comply with the procedural requirements of the Norris-LaGuardia Act, i.e., a hearing in open court; factual findings regarding the equitable considerations listed in 29 U.S.C. Sec. 107; and the filing of a security bond to recompense those enjoined for any expense caused by the erroneous issuance of such injunction.
 
 
 13
 Upon consideration of the above cases and procedural shortcomings, we find that the original restraining order was improperly issued without jurisdiction.
 
 
 14
 The question of whether the instant award of attorney fees is allowable is a more difficult question. The parties have directly contrary interpretations of this Circuit's leading case on the bonding requirements for an injunction under the Norris-LaGuardia Act, Associated Gen. Contractors of Ill. v. Illnois Conf. of Teamsters, 486 F.2d 972 (7th Cir.1973). In Associated Contractors, this court faced a situation where an association of employers brought a declaratory judgment action against an association of unions to contest certain wage scales. After a deadlocked grievance procedure, the union struck. An injunction against the strike was reversed and the case was remanded. The district court then decided the merits of the contract issue in the employer's favor. On appeal the union contended that its recovery of costs caused by the injunction should not have been limited by the amount of the $1,000 bond posted by the plaintiff. In affirming, this court rejected an interpretation of Section 7 of the Norris-LaGuardia Act, as stated in United States Steel Corp. v. United Mine Workers, 456 F.2d 483 (3rd Cir.1972), cert denied 408 U.S. 923 (1972), that allowed recovery in excess of the amount of the bond. In interpreting Section 7, this court in Associated Contractors stated:
 
 
 15
 Indeed, the last sentence [in Section 7] gives the defendant the right to elect either his remedy under the surety bond or to 'pursue his ordinary remedy by suit at law or in equity.' Thus, if apart from the terms of the bond, the defendant is entitled to recover costs, expenses or damages in excess of $1,000, that right is unaffected by the limit on the amount which may be recovered under the bond. Neither the bond nor the statute curtails the recovery the defendant could otherwise obtain. Nor, in our opinion, does the bond or the statute expand the amount which the defendant may recover when he is not asserting a claim under the bond. We believe the right which exists apart from the bond is unaffected by the fact that the statute authorizes security in an amount greater than the claimant could otherwise recover.
 
 
 16
 In this case, the Union does not argue that, apart from Section 7 of the Norris-LaGuardia Act, it has a right to recover expenses or damages in excess of $1,000. It relies only on Section 7 as creating a previously unknown substantive right. Acceptance of its claim would be such a significant departure from long and well settled practice that we believe a congressional intent to effect that change would have been expressed unambiguously. We therefore follow the decision of the Eighth Circuit in International Ladies Garment Workers Union v. Donnelly Garment Company, 147 F.2d 246 (1945), cert. denied, 325 U.S. 852, 65 S.Ct. 1088, 89 L.Ed. 1972, rather than the ruling of the Third Circuit in United States Steel Corp.
 
 
 17
 486 F.2d 972, 975. In the case at bar, Field likewise relies solely on Section 7 of the Norris-LaGuardia Act as creating its right to the $2,500 award for attorney fees.
 
 
 18
 In the International Ladies Garment Workers case, adopted by this court in Associated Contractors, the Eighth Circuit limited recovery to the amount of the injunction bonds and stated: "We think the statutory requirement of a bond, upon certain conditions, in an amount to be fixed by the court is conclusive evidence of the legislative intention that the bond should be the evidence and measure of plaintiff's liability and defendants' protection." 147 F.2d 246, 252. That court went on to comment upon the fact that the decrees under which the bonds were given were erroneous and that defendants incurred expenses and attorney fees, in excess of the bonds' limits, in securing reversal on appeal:
 
 
 19
 The loss, if any, caused defendants by the errors of the court is damnum absque injuria, one of the unavoidable incidents of litigation to which parties are exposed. Union Motor Service, Inc. v. Tropic Aire, Inc., supra, 57 F.2d 479 at page 483.
 
 
 20
 147 F.2d 246, 253.
 
 
 21
 At the time Judge Will issued the TRO, he was informed of the Norris-LaGuardia Act requirement of a bond and he stated, "I will order them to post a zero bond because you don't have any loss." (App. 44.) This court's opinion in Associated Contractors, supra, as amplified by International Ladies Garment Workers, supra, requires the difficult conclusion that, even though the TRO was improperly issued, the court below erred in awarding attorney fees in excess of the zero bond required at the time of the issuance of the TRO.
 
 
 22
 Reversed.
 
 
 
 *
 This appeal was originally decided by unreported order on February 5, 1980. See Circuit Rule 35. The panel has subsequently decided to issue the decision as an opinion
 
 
 **
 Senior District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation