**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS SYSTEM COUNCIL U–4, a labor organization, Plaintiff,**

v.

**FLORIDA POWER AND LIGHT COMPANY, a Florida corporation, Defendant.**

**No. 91–8706–CIV.**

United States District Court, S.D. Florida.

Dec. 16, 1991.

Robert A. Sugarman, Sugarman & Susskind, P.A., Miami, Fla., for plaintiff.

David V. Kornreich, James S. Bramnick, Muller, Mintz, Kornreich, Caldwell, Casey, Crosland & Bramnick, P.A., Miami, Fla., for defendant.

## ORDER

ZLOCH, District Judge.

THIS MATTER is before the Court upon the Motion For Preliminary Injunction (DE 4) ("Motion"), filed by the Plaintiff, the International Brotherhood of Electrical Workers System Council U–4 ("the Union"). This Court held an evidentiary hearing concerning this Motion on December 3, 1991, at which both parties presented testimony.

## I. FACTS

The Defendant, Florida Power & Light Company ("the Company"), has notified its employees that, as part of a comprehensive reorganization plan, approximately three hundred fifty (350) jobs are to be eliminated. The employees are part of a bargaining unit represented by the Union, and are employed under a collective bargaining agreement ("the Agreement") with the Company. The Union has filed this Motion seeking to enjoin the reorganization of the Company, and the attendant layoff and reassignment of employees, pending exhaustion of grievance procedures set forth in the Agreement.

## II. ANALYSIS

The Company has retained broad authority under the Agreement to lay off and reassign employees. Paragraph 4 of the Agreement provides, *inter alia:*

4. Management in Company

The right to hire, promote, suspend, lay off, demote, assign, re-assign, discipline, discharge and reemploy employees in the management of the properties of the company shall be vested exclusively in the company, and the company shall have the right to determine how many men it will employ or retain in the operation and maintenance of its business. . . .

Paragraph 26 grants the employees a collateral right to respond to any layoffs or reassignments which are in violation of the Agreement or are otherwise unjust, by filing a grievance with the Company. Paragraph 27 sets forth comprehensive grievance handling procedures, whereby the Company first must attempt to settle the dispute underlying the grievance. If the parties are unable to settle, the aggrieved employee is entitled to arbitration.

Significantly, the Agreement does not make exhaustion of the grievance procedures a prerequisite to layoff or reassignment. The broad authority to lay off and reassign remains with the Company under Paragraph 4, and no language in the grievance provisions limits this right. The grievance provisions merely provide a remedy to employees who challenge the propriety of layoffs or reassignments.

The Union, having failed to negotiate the right to exhaust the grievance procedures as a prerequisite to layoff, reassignment, or for that matter, the Company's reorganization, now seeks to have this Court invoke the extraordinary remedy of a preliminary injunction to impose this unbargained for obligation upon the Company.

As such, the Union stands in the position of any similarly situated party seeking a preliminary injunction. The Norris–La-Guardia Act strictly limits the power of federal courts to grant injunctions in the labor context. 29 U.S.C. Section 101 *et seq.* (1990). The Supreme Court has carved out a narrow exception to the anti-injunction provisions of that statute in cases where injunctive relief is necessary to preserve the arbitral process. *The Boys Markets v. Retail Clerk's Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970) (*"Boys Markets"*). In *Boys Markets,* the Supreme Court enjoined a strike which violated a no-strike clause in a collective bargaining agreement, upon a finding that the agreement required the parties to arbitrate the dispute underlying the strike. The Court reasoned that failure to enforce the no-strike provision of the agreement would frustrate congressional policy, as set forth consistently in federal labor legislation, to promote the efficient resolution of labor disputes through voluntary arbitration.

Although *Boys Markets* concerned employee violation of a no-strike provision, courts have extended that holding to cases where employer action threatens to vitiate the arbitral process. Those courts generally have limited that extension to cases where the employer action complained of would prevent an arbitrator from granting meaningful relief, rendering any victory in arbitration an "empty victory". *Local Lodge No. 1266, International Association of Machinists and Aerospace Workers, AFL–CIO v. Panoramic Corporation,* 668 F.2d 276, 286 (7th Cir.1981) (*"Panoramic Corporation"*). Such cases arise under factual situations where the employer action sought to be enjoined would "totally and permanently deprive the employees of their employment." *Lever Brothers Co. v. International Chemical Workers Union, Local 217,* 554 F.2d 115, 122 (4th Cir.1976). Examples of employer actions which have been enjoined under this limited extension of the *Boys Markets* exception include the sale of assets, *Panoramic Corporation,* and the liquidation of assets, *Drivers, Chauffeurs, Warehousemen and Helpers Teamsters Local Union No. 71 v. Akers Motor Lines, Inc.,* 582 F.2d 1336 (4th Cir.1978). In those cases it is obvious that the employer action, if allowed to go forward, would scuttle the arbitral process, by obviating the arbitrator's ability to grant meaningful relief.

In the present case, it is the Union's burden to show that it is entitled to injunctive relief under the narrow exception authorized by *Boys Markets.* Specifically, the Union must demonstrate to this Court that breaches of the Agreement are occur-

ring and will continue, or have been threatened and will be committed; that the Union has suffered or will suffer irreparable harm as a result; and that the Union will suffer more from denial of the injunction than the Company will from its issuance. *Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594.[1]

For the sake of clarity in this Court's analysis, it would be helpful to consider each of these elements individually.

### 1. *Breach of Agreement*

■ The Union seeks preliminary injunctive relief to enjoin the Company "from proceeding with its planned reorganization of bargaining unit positions and employees, and from discharging or relocating bargaining unit employees pending the arbitration of filed grievances." (DE 4) Under the *Boys Markets* analysis, this Court initially must decide whether the Company action sought to be enjoined, namely the reorganization of the Company, and the discharge or relocation of employees, would breach the Agreement.

As previously noted, the Agreement grants the Company broad management authority. This authority expressly includes the right to "lay off, demote, assign, reassign," and "the right to determine how many men it will employ or retain in the operation and maintenance of its business...." The actions of which the Union complains necessarily derive from these management rights. This Court is at a loss to understand how a party exercising its express rights under an agreement can at the same time breach the agreement.

The Union contends that it satisfies the first prong of the *Boys Markets* test simply by establishing "that the position (it) will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor." *Panoramic Corporation*, 668 F.2d at 284 (quoting *Amalgamated Transit Union Division 1384 v. Greyhound Lines Inc.*, 529 F.2d 1073, 1077–78 (9th Cir.1976), *vacated and remanded*, 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976), *reversed*, 550 F.2d 1237 (9th Cir.1977), *cert. denied*, 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977)). To this end the Union has submitted five grievances recently filed with the Company purporting to show that the Company is breaching the Agreement. Without delving into the merits of the grievances, which is a matter properly left to an arbitrator, this Court disagrees that the grievances satisfy the first prong of the *Boys Markets* test.

Only one of the grievances arguably challenges the actions sought to be enjoined. That grievance, GO No. 91–182, requests that the Company "reinstate all displaced or laid off employees replaced by Contractors as a result of the actions of the Company of November, 1991." (Plaintiff's Exhibit 4) At the hearing held on this matter, the Union introduced no evidence that the Company has replaced laid off employees with Contractors, and admitted that it lacked any such evidence. Further, the Union failed to demonstrate how any such hiring would be unjust or would violate the Agreement. The Company, on the other hand, introduced evidence that it commonly used independent contractors at its work sites, and that it was not replacing laid off employees with contractors. Based on the evidence, this Court concludes that the Union has failed to demonstrate that its position in arbitration as to this grievance would be anything but futile.

The other grievances introduced as evidence involve the reclassification of plants, and the Company's alleged violation of the Agreement's rolling and job posting procedures. The allegations made in those grievances are not relevant to show whether the actions sought to be enjoined herein breach the Agreement. If the Union seeks to enjoin the Company actions described in those grievances, it should have sought injunctive relief to prohibit those actions. As it stands, the Union seeks to enjoin the reorganization, and the laying off and reassigning of employees, and should not be

---

1. The Supreme Court in *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), narrowed *Boys Market* to apply only in cases where the underlying dispute is found to be arbitrable. Because the parties herein agree that the underlying dispute is arbitrable, this Court need not address this issue.

able to satisfy the first prong of the *Boys Markets* test by citing alleged breaches by the Company, over matters which the Motion does not seek to enjoin. If the Supreme Court intended to allow such bootstrapping, the first prong of *Boys Market* would cease to have any meaningful effect, as any union seeking an injunction could point to any grievance against an employer to prove that the employer is breaching the collective bargaining agreement.

The only reasonable reading of *Boys Markets* is that it requires the party seeking the injunction to demonstrate that the action sought to be enjoined arguably breaches the collective bargaining agreement. The Union has failed to show this Court how the action sought to be enjoined in any way breaches the Agreement. At most, the Union has demonstrated only that there are grievances against the Company, and that some of those grievances allege breaches of the Agreement. Accordingly, this Court finds that the Union has not demonstrated that the actions of the Company sought to be enjoined breach or threaten to breach the Agreement.

### 2. *Irreparable Harm*

■ Having found that the first element of *Boys Markets* is not satisfied, this Court need not continue its analysis as the Union is required to satisfy all three requirements stated in *Boys Markets* in order to gain injunctive relief. *Aluminum Workers International Union, AFL–CIO, Local Union No. 215 v. Consolidated Aluminum Corporation*, 696 F.2d 437, 444 (6th Cir. 1982) ("*Aluminum Workers*"). However, so important is the element of irreparable harm for a party seeking injunctive relief in a labor dispute, that "the irreparability of the injury suffered by the union has in many cases become virtually the sole inquiry in those cases where injunctive relief is sought against the employer." *Aluminum Workers*, 696 F.2d at 443. Because of the significance of the issue, and for the sake of any reviewing court, this Court will consider whether the Union will be irreparably harmed by the Company's actions.

The Union contends that the layoff or reassignment of three hundred fifty (350) employees would have a domino effect within the Company, and would cause such displacement that the harm suffered would be irreparable. To explain, the Agreement allows an employee who has been displaced from his job to take an equal or lower job within the Company for which he has seniority and qualification. This right is identified by the Agreement as a right to roll. To the extent that one employee displaces another employee by virtue of the rolling process, the displaced employee possesses the same right to roll. The right to roll, which was negotiated by the Union to benefit its senior employees, assures that the Company's jobs are held by the most senior employees.

The Union foresees that once three hundred fifty (350) employees are laid off or otherwise displaced, they would exercise their rights under the Agreement to roll into positions held by other employees. Those displaced employees would then exercise their right to roll until the rolling effect reached the most junior employees who, with no ability to roll, would be laid off. The Company admits that this rolling could affect employees in a three-to-one (3:1) ratio, and the layoff or reassignment of three hundred fifty (350) employees could cause over one thousand (1,000) employees to be displaced.

The Union takes the position that once this domino effect is allowed to run its course, it would be difficult for an arbitrator to order undone that which has been done. In essence, its position is that once the dominoes have been toppled, it is difficult to reset them. The Union contends that under this scenario, the right to arbitrate would be effectively nullified because an arbitrator could not restore the status quo by placing the employees back into their previously held positions. Further, the Union contends that the consequences of displacement, to wit the sale of homes and attendant hardship, cause irreparable harm in themselves which this Court should act to prevent.

The Union's characterization of the roll scenario is clever, but inaccurate. The Company does not initiate a domino effect by laying off or reassigning employees, it simply exercises its right under the Agreement to manage the Company. The domino effect is caused when the employees exercise their right under the Agreement to roll into occupied positions. It is clear that the initially laid off employees have two options under the Agreement. They may suffer the layoffs, or they may invoke the roll provisions of their Agreement. If they suffer the layoffs, out of confidence in their position before the arbitrator, they will not suffer the allegedly irreparable displacement occasioned by rolling.

If the Union is concerned that the roll provisions might cause irreparable harm to the employees by creating a domino effect, the Union should give the employees the opportunity to waive their right to roll. This Court is convinced, by the testimony provided by the Union representatives during the hearing on this matter, that the Union could submit a proposal to the employees by which they could vote to waive their right to roll. In any event, it is within the available means of the employees to prevent the so-called irreparable harm that they seek to have this Court prevent by extraordinary judicial means.

Even if this Court was convinced that enjoining the Company's actions would be the only way to prevent the harm which the Union seeks to avoid, this Court could not grant injunctive relief. The only type of harm sufficient to meet the narrow exception carved out by the Supreme Court in *Boys Markets* is that harm occasioned by actions which defeat the arbitral process. Here, the harm sought to be prevented simply is not of the type which destroys the arbitral process.

As such, the issues of irreparable harm presented in this case are similar to those confronted by the Sixth Circuit in *Aluminum Workers*. There, the employer sought to restructure certain job classifications with the ultimate effect of eliminating sixteen employees. Unlike the present case, the agreement between the employer and the union included a provision limiting the employer's ability to reclassify employees.

The union prevailed in gaining injunctive relief at the district court level by arguing that the sixteen employees would suffer irreparable harm by being laid off prior to exercising their right to arbitrate. The district court based its conclusion that irreparable harm existed partly upon a finding that any arbitrator's award could not "fully compensate employees for the repossessions, foreclosures, and injury to credit stature which could accompany unemployment." *Aluminum Workers*, 696 F.2d at 443.

The Sixth Circuit reversed, upon a finding that the union had failed to demonstrate irreparable harm. Specifically, the court stated:

> Absent some indication of action on the part of the employer which could jeopardize its ability to reinstate affected employees or to pay them wages for the period of unemployment, we hold that the loss of employment, even if occasioned by employer action which is subject to arbitration, is not irreparable harm and will not support a claim by the union for injunctive relief.

*Aluminum Workers*, 696 F.2d at 443.

In the present case, the Company has not threatened any action that could jeopardize its ability to reinstate affected employees. The Company has testified that an arbitrator would be able to restore laid off employees and to pay back wages. The Union's concern that the displacement caused by the rolling effect would make it impossible for an arbitrator to grant such relief is misplaced. Even if the employees were to choose to invoke their rolling rights, an arbitrator would have the authority to place the employees back into their former positions with back pay. To the extent that it would be difficult to do so because of the displacement caused by the rolling scenario, that would be a consequence of the employees' choice to exercise their contractual right to roll. It certainly is not a consequence of the Company activity which the Union seeks to enjoin.

Significantly, the Sixth Circuit in *Aluminum Workers* was clear that the incidental harm caused by the reclassification, namely the possible "repossessions, foreclosures and injury to credit status," were not of the type that could be considered irreparable harm under the *Boys Markets* exception. The court stated:

> While these are undeniably hardships which may be attendant upon unemployment, they do not represent the type of harm that, by its occurrence, threatens the integrity of the arbitral process.

*Aluminum Workers*, 696 F.2d at 444.

Similarly, to the extent that the Union herein identifies the irreparable harm as that harm arising from the displacement caused by the rolling scenario, namely the sale of homes and the attendant hardship, such harm is not the type which endangers the arbitral process, as required under the *Boys Markets* exception.

For these reasons, this Court is unconvinced that this falls within the unique category of cases cited by the Union where irreparable harm exists because employer action nullifies the bargained for right to effectively arbitrate. Rather, this falls within the more common category of cases where courts have found that the layoff and reassignment of employees does not cause irreparable harm, because an arbitrator would have the ability to reinstate the employees and grant back pay. *See International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local Union No. 251 v. Almac's Inc.*, 894 F.2d 464 (1st Cir.1990); *Panoramic Corporation*, (enjoining sale of assets but not layoffs because reinstatement is possible remedy); *Chicago Typographical Union, No. 16 v. Chicago Newspaper Publishers' Association*, 620 F.2d 602 (7th Cir.1980).

Accordingly, this Court finds that the Union has not sufficiently demonstrated irreparable harm.

### 3. *Balance of Hardships*

Given the Union's failure to adequately demonstrate the first two prongs of the *Boys Markets* test for injunctive relief, there is no need for this court to engage in a lengthy and factually cumbersome assessment of the balance of hardships. As stated in *Aluminum Workers*, "Only in those cases where a party seeking relief can demonstrate irreparable harm ... need a court go on to balance that harm against the harm to be suffered by the party against whom the relief is sought." *Aluminum Workers*, 696 F.2d at 444. For these reasons, this Court chooses not to address the balance of hardships.

### III.   CONCLUSION

The Agreement between the Company and the employees does not require the Company to exhaust grievance procedures before engaging in a reorganization and the laying off or reassigning of employees. The Union has failed to demonstrated the ordinary principles of equity usually applied in labor disputes which would allow this Court to impose such an unbargained for obligation upon the Company through the extraordinary remedy of a preliminary injunction.

Accordingly, after due consideration, it is

ORDERED AND ADJUDGED that the Motion for Preliminary Injunction (DE 4) filed herein by the Plaintiff is hereby DENIED.

DONE AND ORDERED.