**LEVER BROTHERS COMPANY,**
Appellant,

v.

**INTERNATIONAL CHEMICAL WORKERS UNION, LOCAL 217, Appellee.**

**No. 76–1340.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 4, 1976.

Decided Nov. 30, 1976.

James P. Garland, Baltimore, Md. (David R. Owen and Lynne A. Battaglia, Semmes, Bowen & Semmes, Baltimore, Md., on brief), for appellant.

Charles Lee Nutt (John R. Francomano and Stuart Levine, Francomano, Clements & Park, Baltimore, Md., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and RUSSELL and HALL, Circuit Judges.

KENNETH K. HALL, Circuit Judge.

This civil action was brought under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), by Local 217 of the International Chemical Workers Union ("Union") against Lever Brothers Company ("Company") seeking injunctive relief to prevent the Company from transferring its Baltimore, Maryland, soap production operation to Hammond, Indiana, until the Company complied with what the Union contended were certain specified contractual prerequisites to the move. The District Court granted a temporary restraining order and then a preliminary injunction enjoining the plant relocation pending the completion of arbitration to construe certain terms of the labor contract and conditioned recovery on the injunction bond upon a determination by the District Court, the Court of Appeals, or the Supreme Court of the United States that the Company had been wrongfully enjoined or restrained.

The Company unsuccessfully moved to dissolve the injunction, the Union initiated grievance was found to be arbitrable, and an award was rendered in favor of the Company. The preliminary injunction expired, as ordered, and the Company presumably has relocated its plant facility. The Company appeals seeking a determination that the preliminary injunction was wrongfully issued, and also seeks a determination that the injunction bond should have been conditioned on the outcome of the arbitration. We affirm.

Three issues are involved in this appeal. They are: (1) whether the grievance filed by the Union should have been submitted to the arbitrator in accordance with the terms of the collective bargaining agreement; (2) whether the District Court properly issued the preliminary injunction in order to maintain the *status quo* pending the completion of arbitration; and (3) whether the District Court properly conditioned the security required by F.R.C.P. 65(c) to be provided by the Union based upon whether or not the Company should be found to have been wrongfully enjoined or restrained, instead of conditioning it upon the Company's success or failure on the merits of the arbitration.

## I

## ARBITRABILITY

The Company and the Union had entered into a collective bargaining agreement covering its plant located at Baltimore, Maryland. On October 28, 1975, the Company advised the Union that it was *permanently* closing its Baltimore plant and *transferring* that production to its Hammond, Indiana facility which was represented by the Oil, Chemical and Atomic Workers union.

The Union argued that since the Hammond plant was represented by a union other than the International Chemical Workers, then the Company action constituted "outside contracting" under the collective bargaining agreement, and the Union was entitled to "due consideration" before the actual assignment of work to the outside contractors (i. e. the transfer to Indiana) occurred.[1]

The Company argued that the transfer was an "elimination" under the collective bargaining agreement.[2] requiring only two weeks written notice to the Union in advance of the move, which notice it had given. Thus, the release of "full information," necessary when there was a "contracting out," was not required.

Section 6.9, the grievance-arbitration clause, provided:

"Grievances within the meaning of the Grievance procedure and of this arbitration clause shall consist only of disputes about the interpretation or application of particular clauses of this Agreement and about alleged violations of the Agreement. The Arbitrator shall have no power to add to, or subtract from, or modify any of the terms of this Agreement, nor shall he substitute his discretion for that of the Company or the Union where such discretion has been retained by the Company or the Union, nor shall he exercise

any responsibility or function of the company or the Union."

On November 14, 1975, the Union filed a grievance concerning the pending plant transfer, contended that it was "contracting out" rather than an "elimination" of work, and requested that the Company refrain from moving the plant until the "due consideration-full information" contractual prerequisites were met. The Company denied the grievance and this litigation ensued.

On appeal, the parties agree that the District Court initially had to determine whether the dispute was subject to arbitration under the collective bargaining agreement. *International Union of Operating Engineers, Local 150 v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), but they disagree that the issue presented was arbitrable.

The Union contends that its grievance concerned the interpretation of various clauses of the Agreement and was arbitrable. The Company contends that the District Court too readily found arbitrability and failed to determine first, what the dispute was, and second, whether the parties had contractually agreed to submit such a dispute to arbitration.

 We hold that the District Court correctly determined, first, that a dispute

1. Section 3.15 of the Agreement provided:
 "The Union recognizes that there are functions, powers and authorities belonging solely to the Company, prominent among which, but by no means wholly inclusive, are the functions of . . ., the assignment of work to outside contractors after due consideration by the Company to the interests of regular employees. * * *"
 This provision was amplified by a Memorandum of Understanding (called the "Shorey" letter) executed in 1957 which provided that although the final decision to contract work outside the plant remained a Company prerogative, it agreed to notify the Union in advance of its intention to contract out work and once that decision had been made, to furnish "full information" to the Union regarding the reasons for the action.

2. Section 3.16 of the Agreement provided:
 "Subject to the provisions of this Agreement . . . there shall be no interference

with the functions of the Company as outlined in the following sub-paragraphs . . . . :
 " * * *
 "(e) To permanently eliminate, change or consolidate jobs, sections, departments or divisions subject to advance written notice to the Union as specified in 3.16(e).
 "(1) The following definitions apply to paragraph 3.16(e):
 "(a) *Elimination*—When a job or jobs are permanently removed from a department, section, or division, and no portion of the duties are assigned to other jobs in the plant.
 " * * *
 "(2) When there is an *Elimination* the Union will be given two weeks advance written notice to arrange for applicable seniority moves.
 " * * * *"

did exist between the Company and the Union regarding the characterization of the plant transfer as an "elimination" or as "contracting out." Second, we hold that the District Court properly analyzed the parallels which existed between the broad arbitration clause in *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960),[3] and the above-quoted arbitration clause in this case, between the management rights clause in *Warrior & Gulf*[4] and language of similar import in this case,[5] and correctly concluded that neither the contract in *Warrior & Gulf,* nor the contract in this case expressly excluded a particular grievance from arbitration. Thus, the District Court correctly held the grievance in this case to be a matter for consideration by the arbitrator. In this case, it cannot be said with positive assurance that the arbitration clause was not susceptible of an interpretation that covered the asserted dispute. *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582–3, 80 S.Ct. 1347. The question of the interpretation of the collective bargaining agreement was properly left to the arbitrator, and not predetermined by the Court on the ruling on the preliminary injunction. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO,* 428 U.S. 397, 96 S.Ct. 3141, 3148–3149, 49 L.Ed.2d 1022 (1976).

## II

## THE INJUNCTION PENDING ARBITRATION

Before issuing the preliminary injunction, the court below analyzed the prerequisites to the issuance of injunctive relief and concluded that as to the first prerequisite, the Union had shown a "probable right," that is, a likelihood that the Union would prevail at a trial on the merits.[6] The court equated this with the likelihood that the Union would prevail in its contention that the dispute in issue was one for the arbitrator. Thus, the preliminary injunction was issued halting the transfer of the plant and insuring the maintenance of the *status quo* until the arbitration could be completed.

The Union contends that the injunction properly issued to protect its contractual right to arbitrate grievances and had it prevailed in the arbitration, it would have been provided with "full information" regarding the reasons for the transfer and would have marshalled economic evidence to attempt to persuade the Company not to make the transfer. Thus, the injunction preserved the *status quo* in order to save the arbitration clause. See: *Amalgamated*

---

**3.** That arbitration clause provided that:

"Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, there shall be no suspension of work on account of such differences but an earnest effort shall be made to settle such differences immediately in the following manner: [The 5-step procedure is then set forth]." (363 U.S. 574, 576, 80 S.Ct. 1347, 1349).

**4.** That clause provided that:

"Issues which conflict with any Federal Statute in its application as established by Court procedure or matters which are strictly a function of management shall not be subject to arbitration under this section." (363 U.S. 574, 576, 80 S.Ct. 1347, 1349).

**5.** See the grievance—arbitration clause quoted *supra* where it provides that the arbitrator is not to substitute his discretion for that of the Company or the Union where such discretion has been retained by the Company or the Union, nor exercise any responsibility or function of the Company or Union.

**6.** The other two prerequisites are the existence of a "probable danger" that the right may be defeated, which necessarily requires a showing of irreparable injury if the injunction was not granted, and that the need to protect the plaintiff's rights clearly outweighs the possible injury to the defendant should the injunction issue. *West Virginia Highlands Conservancy v. Island Creek Coal Co.,* 441 F.2d 232 (4th Cir. 1971). The reasoning of the District Court regarding the satisfaction of these two prerequisites is not challenged here.

*Transit Union, Division 1384 v. Greyhound Lines, Inc.*, 529 F.2d 1073 (9th Cir. 1976).[7]

The Company contends that although injunctive relief may have appropriately issued to require arbitration, it was inappropriate to *also* enjoin the transfer of the plant, since the arbitrator could not halt the transfer and only could require compliance with the "Shorey" letter [8] relying upon *Hoh v. Pepsico, Inc.*, 491 F.2d 556 (2nd Cir. 1974).[9]

■ We find the reasoning in *Greyhound Lines, supra*, a case with similar facts to the case *sub judice*, more persuasive than that contained in *Pepsico*, and hold, as did the court in *Greyhound Lines*, that:

> ". . . a plaintiff, without regard to whether he is the employer or the union, seeking to maintain the status quo pending arbitration pursuant to the principles of *Boys Markets [Inc., v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)]* need only establish that the position he will espouse in arbitration is sufficiently sound to prevent the arbitration from being a futile endeavor. If there is a genuine dispute with respect to an arbitrable issue, the barrier [to the issuance of an injunction] we believe appropriate[ly sic] has been cleared." (529 F.2d 1073, 1077–1078).

■ The District Judge did not abuse his discretion by issuing the preliminary injunction preserving the *status quo* until the completion of the pending arbitration.

### III

### THE CONDITIONS OF THE BOND

The District Court conditioned the issuance of the preliminary injunction upon the Union filing a bond in the amount of

$60,000 as security for the payment of such costs and damages as may have been incurred or suffered by the Company should it later have been determined by the District Court, the Court of Appeals, or the Supreme Court of the United States that the Company had been wrongfully enjoined or restrained. See Rule 65(c) of the Federal Rules of Civil Procedure.

The Company contends that the bond should have been conditioned upon the outcome of the merits of the arbitration and not left for determination by the courts.

■ We hold that the District Court correctly conditioned the injunction bond upon the possible wrongful issuance of the preliminary injunction, and not upon the outcome of the merits of the arbitration. Rule 65(c) of the Federal Rules of Civil Procedure does not stand as authority that injunction bonds in labor cases are to be conditioned on the outcome of the merits of arbitration. Rather, it is settled that the recoverable damages under such a bond are those that arise from the operation of the injunction itself and not from damages occasioned by the suit independently of the injunction. *Greenwood County v. Duke Power Co.*, 107 F.2d 484, 489 (4th Cir. 1939); *Amalgamated Transit Union, Division 1384 v. Greyhound Lines*, 529 F.2d 1073, 1079 (9th Cir. 1976); 7 J. Moore, *Moore's Federal Practice*, ¶ 65.10[1], 65–96, 97 (1975); 11 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2973, 652–654 (1973).

■ We are in agreement with the Third and Ninth Circuits that an injunction bond posted in a *Boys Markets* [10] case is payable only if the preliminary injunction is found to have been wrongfully issued, where, for example, the court erroneously issues a preliminary injunction over a labor dispute not

7. The decision in *Greyhound Lines,* vacated and remanded for reconsideration by the Supreme Court the day oral arguments were held in this case, and now reversed by the Ninth Circuit, is dealt with in the Addendum to this opinion, *post.* Suffice it to say that we adhere to all our holdings in this case.

8. See Note 1, *supra.*

9. For a post *Hoh,* post *Buffalo Forge* decision, following *Hoh* and discussing *Buffalo Forge,* see *Communication Workers of America v. Western Electric Company,* 430 F.Supp. 969 (S.D.N.Y., filed March 23, 1977).

10. *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

covered by the grievance-arbitration provisions of the contract. *See, Amalgamated Transit Union, Division 1384 v. Greyhound Lines,* 529 F.2d 1073, 1079 (9th Cir. 1976); *United States Steel Corporation v. United Mine Workers of America,* 456 F.2d 483, 488 (3rd Cir. 1972). Further, as the court noted in *Greyhound Lines,* to accept the Company's contention that the bond should be contingent upon the merits of the arbitration in this case would be inconsistent with our holding in Part II *supra* that a showing by the Union of probable success in the arbitration is not necessary in order to obtain a *Boys Market* preliminary injunction. *Amalgamated Transit Union, Division 1384 v. Greyhound Lines,* 529 F.2d 1073, 1077.

We add only that the parties to the collective bargaining agreement did not agree to indemnify one another contingent upon the outcome of arbitration· rather, they agreed to arbitrate. As we have held in Parts I and II of this opinion, the preliminary injunction was properly issued pending arbitration over an arbitrable dispute, and therefore was not wrongfully issued. The requirement that the injunction bond be posted in accordance with Rule 65(c), F.R. C.P., was correct, and the action of the District Court is

*AFFIRMED.*

### ADDENDUM TO OPINION

Following the decision by the panel in this case on November 30, 1976, Lever Brothers filed a petition for rehearing and a suggestion for a rehearing *en banc.* In part II of the panel opinion dealing with the injunction pending arbitration, and also in part III of the opinion dealing with the conditions of the bond, this court relied

upon *Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.,* 529 F.2d 1073 (9th Cir. 1976), finding the reasoning in that case as to both points more persuasive than that contained in *Hoh v. Pepsico, Inc.,* 491 F.2d 556 (2d Cir. 1974).

Unbeknownst to counsel, on the day oral argument was heard in this case, the Supreme Court granted certiorari in *Greyhound Lines,* vacated the judgment in that case and remanded it to the United States Court of Appeals for the Ninth Circuit "for further consideration in light of *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976)." *See Greyhound Lines, Inc. v. Amalgamated Transit Union, Division 1384,* 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68 (1976).

Accordingly, this court entered an order deferring consideration of the petition for rehearing and the suggestion for rehearing *en banc* filed by Lever Brothers pending the receipt and review of supplemental briefs to be filed by counsel, and thereafter until further order of this court. The supplemental briefs have been filed.

As heretofore noted, the Ninth Circuit reconsidered its previous ruling and has reversed itself, holding:

> There being neither an express nor implied in fact promise by Greyhound to preserve the status quo, the injunction to preserve it pending arbitration was improperly entered. *Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.,* 550 F.2d 1237 at 1239 (9th Cir. 1977), hereinafter Greyhound Lines II.

Lever Brothers of course places great reliance on *Greyhound Lines II,* and basically sets forth two [11] contentions which it be-

---

11. In its supplemental briefs filed before the decision in *Greyhound Lines II,* Lever Brothers raised a third contention of little import at present when it argued that when the Supreme Court rendered its Memorandum Decision vacating and remanding *Greyhound Lines* for reconsideration in light of the Supreme Court's prior holding in *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), this left *Hoh v. Pepsico, Inc.,* 491 F.2d 556 (2d Cir. 1974), as

the controlling authority and the panel accordingly erred by relying upon *Greyhound Lines.* We disagree with the interpretation placed upon the effect of the vacation and remand in *Greyhound Lines.* When the Supreme Court remands a decision for reconsideration in light of an opinion which was not in existence at the time the court of appeals made its decision, it takes no position on the merits of the case. *See NLRB v. Adams Dairy, Inc.,* 350 F.2d 108 (8th Cir. 1965), *cert. denied,* 382 U.S. 1011, 86

lieves justifies reversal of the original panel opinion. We adhere to our previous opinion.

First. Lever Brothers argues that *Buffalo Forge* was incorrectly applied by the panel in our earlier decision, and that the issuance of a preliminary injunction to preserve the *status quo* pending arbitration is explicitly barred by the *Buffalo Forge* doctrine absent an actual agreement[12] to preserve the *status quo. See Greyhound Lines II, supra.* Again, upon the facts of the instant case, we disagree.

The district court correctly issued the preliminary injunction to preserve the *status quo* pending the completion of arbitration. It did not order the plant moved to Indiana. It did not order the plant to remain in Baltimore. It simply preserved a status of neutrality so the parties could arbitrate the underlying differences between them as to the interpretation of the collective bargaining agreement. Had the district court not preserved the *status quo*, Lever Brothers would have *permanently transferred* their plant from Baltimore, Maryland, to Hammond, Indiana. If the union then prevailed in the arbitration, they would have had a double burden to satisfy —first, to convince the company that it should not have moved the plant to Hammond, Indiana—a *fait accompli*, and then it would have had the burden to convince the company to move the plant back to Baltimore, Maryland. The arbitration in this sense would undoubtedly have been "but an empty victory" for the union. *See Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas Railway Co.*, 363 U.S. 528, 534–535, 80 S.Ct. 1326, 4 L.Ed.2d 1435 (1960).

A comparison of the effect of the decision in *Greyhound Lines* versus the decision in the instant case demonstrates the injury which would occur to the arbitral process if the permanent transfer of the plant was permitted in this case pending arbitration.

In *Greyhound Lines*, the issue concerned a change of work schedules for existing employees who were employed by a bus line. Whether or not Greyhound was permitted to unilaterally alter the work schedules of its employees under the collective bargaining agreement, the employees would still be employed, and still earn wages albeit on different schedules. In his award, the arbitrator *could* subsequently alter pay schedules or revise the work schedules depending on whether he found for the union or the company and return the parties to substantially the *status quo ante.*

In the instant case, had there not been an injunction pending arbitration to preserve the *status quo*, the employees at the Baltimore plant *would have been totally and permanently deprived of their employment*, and, as above noted, if the union prevailed at the arbitration, would have had a double burden of convincing the company not only not to move, which it had already done, but to return the plant. It was incumbent upon upon the union to prevail at arbitration, obtain the "full information" which they sought, and then seek to convince the company not to move its plant.

The reasonableness of our holding is consonant with the Ninth Circuit decision in *Greyhound Lines II* wherein that court also recognized that:

> [i]n any event, it is clear that in this case the arbitration of the dispute will be unaffected by Greyhound's alteration of the status quo. Should Greyhound be wrong in its position in arbitration the situation can be restored substantially to the status quo *ante. Cf. Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). (*Greyhound Lines II, supra*, 550 F.2d 1237 at 1239).

S.Ct. 619, 15 L.Ed.2d 526 (1966); *see generally,* R. Stern and E. Gressman, *Supreme Court Practice*, § 5.12 (4th Ed. 1969). The Ninth Circuit was free to and did reconsider its previous ruling.

12. Note that *Greyhound Lines II* recognizes both that an "implied" promise to preserve the *status quo* as well as an "express" or "actual" promise to preserve the *status quo* may arise from the contract and the relations between the parties. *Greyhound Lines II, supra*, 550 F.2d 1237, 1239.

■ Further, the rule contained in this case is obviously a two-sided coin. An injunction to preserve the *status quo* pending arbitration may be issued either against a company or against a union in an appropriate *Boys Markets* case where it is necessary to prevent conduct by the party enjoined from rendering the arbitral process a hollow formality in those instances where, as here, the arbitral award when rendered could not return the parties substantially to the *status quo ante.*

■ Further, it should be noted that the *policy* espoused in *Buffalo Forge* supports rather than defeats the previous panel decision because of the concern which it expresses for judicial non-interference in the arbitral process. Questions concerning the interpretation of collective bargaining agreements are properly left to the arbitrators, and should not be predetermined by the courts on their rulings on the preliminary injunctions. This has long been the policy of the federal courts. *See United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Buffalo Forge Co. v. United Steelworkers of America,* 428 U.S. 397, 96 S.Ct. 3141, 3148–3149, 49 L.Ed.2d 1022 (1976); and, most recently, *Nolde Brothers, Inc. v. Bakery Workers,* —— U.S. ——, ——, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). We agree with the commentator's recent analysis of *Buffalo Forge* to the effect that ". . . the interpretation and application of contractual provisions remain the exclusive province of the arbitrator," and further that "[c]ourts will intervene only when necessary to protect the arbitral jurisdiction and then only in a manner that avoids examination of the merits, and thus respects the process of which it seeks to protect." Note, *The Supreme Court, 1975 Term,* 90 Harv.L.Rev. 56, 251 (1976). Similarly, we agree that ". . . the lasting significance of *Buffalo Forge* may be chiefly as a limit to the *Boys Markets* doctrine and [as a result, it serves] as a signal to federal judges to stay out of the merits of labor disputes." *Id.,* at 255.

Second. Regarding the terms and conditions of the bond, we reaffirm our holding that the parties to the collective bargaining agreement in this case did not agree to indemnify one another contingent upon the outcome of arbitration; rather, they agreed to arbitrate. Thus, the bond in this case was properly posted in accordance with F.R. C.P. 65 when it was conditioned upon whether or not the preliminary injunction was found to have been wrongfully issued, as set forth in part III of the panel opinion, rather than being made contingent upon the merits of the outcome of the arbitration.

The panel opinion is *reaffirmed.*