724 F.Supp. 188 (1989)
TEACHERS ASSOCIATION OF the JAPANESE EDUCATIONAL INSTITUTE OF NEW YORK, INC., Plaintiffs,
v.
JAPANESE EDUCATIONAL INSTITUTE OF NEW YORK and Nippon Club, Inc., Defendants.
No. 89 Civ. 6482 (RWS).
United States District Court, S.D. New York.
October 27, 1989.
*189 Gladstein, Reif & Meginniss, New York City, Attorney for plaintiffs; Kent Y. Hirozawa, of counsel.
Marks Murase & White, New York City, for defendants; Steven M. Swirsky, Richard M. Reke, of counsel.
SWEET, District Judge.
Plaintiff Teachers' Association of the Japanese Educational Institute of New York, Inc. ("the Association") has applied for a preliminary injunction to prevent defendants Japanese Educational Institute of New York ("the Institute") and Nippon Club, Inc. from taking certain actions which are the subject of a pending arbitration proceeding between the Association and the Institute, and to maintain the status quo ante pending resolution of the dispute by the arbitrator. The Association has initiated this action pursuant to section 301 of the Labor Management Relations Act, 1947, as amended, 29 U.S.C. § 185. For the reasons set forth below, the plaintiff's request for a preliminary injunction is granted.

The Parties
The Association is a labor organization within the meaning of 29 U.S.C. § 152(5) and the recognized collective bargaining representative of the 215 teachers employed by the Employer's Japanese Weekend School.
The Institute operates the Japanese Weekend School which regularly holds classes at twelve different locations in the New York metropolitan area, including Westchester County, Nassau County, Queens, and New Jersey. The Institute, a completely private organization, maintains its office and principal place of business at 187-30 Grand Central Parkway, Jamaica Estates, New York 11432. The Weekend School, originally operated by the defendant Nippon Club, Inc., was incorporated in 1975 in New York. The Association contends, on information and belief, that the corporation has been dissolved and defendant Nippon Club has now resumed operation of the school. The Institute contends that the Nippon Club "has no business relationship with the Institute." The Institute is an employer in an industry affecting commerce within the meaning of 29 U.S.C. § 152(2).
The Defendant Nippon Club, Inc. is a membership organization incorporated under the laws of the State of New York and presently maintains an office and principal place of business at 115 East 57th Street, New York, New York.

Prior Proceedings
On September 29, the Association filed its complaint and sought by order to show cause a temporary restraint and preliminary injunction. A restraint was issued on that date directing the Institute to maintain the status quo ante concerning the convocation and conduct of Shunin-kai meetings pending the hearing on the motion for preliminary injunction. After arguments and submissions the parties agreed to a continuation of the restraint until the disposition of the motion.

The Facts
The underlying facts of this matter are not in dispute. The Association and the Institute have been parties to successive collective bargaining agreements since October 21, 1983. The current collective bargaining agreement ("the Agreement") contains a broad management rights provision[1] and a broad grievance and arbitration *190 provision.[2]
The dispute arises out of pending arbitration concerning Article XX of the Agreement. Article XX provides in full:
Shunin-kai/Monthly Meetings
The Shunin-kai meetings shall be held monthly to discuss matters of academic and administrative [sic] concern and shall not address in any manner matters covered by this collective bargaining agreement.
The Shunin-kai meetings shall be co-chaired by the Principal of the Japanese Educational Institute, or the Principal's designee, and the Chairperson of the Association or the Chairperson's designee.
The effective dates of the current Agreement are from April 1, 1989 through March 31, 1990.
The Japanese word "shunin" may be roughly translated as "master" or "lead teacher". "Kai" means meetings. The Shunin are a group of teachers from the Institute's Weekend School, chosen by their peers, who meet regularly with the Weekend School's administration to discuss matters of academic and administrative concern as provided for by Article XX of the Agreement.
The Shunin-kai is not only a series of meetings but also an institution. The Shunin-kai originated in September of 1963, and has been held continuously through July of 1989. The practices and procedures of the Shunin-kai were memorialized in a 1971 document called the Shunin-kai Rules and later amended to incorporate provisions inconsistent with Article XX of the Agreement. As amended, the Rules have continued in full force and effect and the Shunin-kai have met each month of the academic year until this July when the Institute sought to change the structure of the Shunin-kai.
After the last round of collective bargaining, the Institute proposed changes in Article XX and the Shunin-kai Rules. By agreement the Association and the Institute deferred discussion of possible changes in the Shunin-kai until the next round of contract negotiations.
On June 3, 1989 the Institute's principal, Mr. Murofushi, distributed directly to the teachers a leaflet proposing changes in the structure of the Shunin-kai. On June 17, 1989 he distributed a survey form concerning the proposed changes. On June 24, 1989 the principal distributed results of this survey and on July 1, 1989 he distributed to all teachers a memorandum announcing a change in the structure of the Shunin-kai.
The proposed format alteration required that the monthly meeting, currently held in Manhattan and at which the principal and the chair of the Association (or their designees) preside, instead be three separate yet simultaneous meetings held in Queens, Westchester, and New Jersey, and chaired by the Vice Principal, the Principal, and another teacher, respectively. The Association *191 would be allowed to designate the co-chairs for the three locations.
The Association filed with the Institute grievances concerning the change in the structure of the Shunin-kai. One week thereafter, on July 13, 1989, the Association filed with the American Arbitration Association and served upon the Institute a letter demand for arbitration of the dispute involving the Institute's proposed changes. The next day, one day before the proposed changes were to be implemented, the Institute notified the Association that the scheduled implementation would be delayed pending resolution of the dispute by an arbitrator. The Institute did not convene any Shunin-kai meeting for July or August. After the American Arbitration Association selected an arbitrator who scheduled the arbitration date for November 15, 1989, the Institute notified the Association that it would proceed with the implementation of the proposed changes on September 30, 1989. The proceedings described above then ensued.

Jurisdiction and Standard for a Preliminary Injunction
Federal labor law policy prohibiting injunctions in peaceful labor disputes over arbitral issues is set forth in the Norris-LaGuardia Act. 29 U.S.C. §§ 101-115 (1982). Nevertheless, the Supreme Court has allowed courts to consider the propriety of an injunction where necessary to preserve the arbitral process. Boys Markets, Inc. v. Retail Clerk's Union Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). In Boys Markets, the Supreme Court ruled that a strike over an arbitrable dispute could be enjoined pending resolution of the dispute through arbitration. Id. at 254, 90 S.Ct. at 1594. Courts have also recognized "reverse Boys Markets injunctions," or injunctions against employers to maintain the status quo in a labor dispute pending arbitration. See Oil, Chem. & Atomic Workers Int'l Union, Local 2-286 v. Amoco Oil Co., 885 F.2d 697 (10th Cir.1989); Independent Oil & Chemical Workers, Inc. v. Proctor & Gamble Mfg. Co., 864 F.2d 927, 931 (1st Cir.1988); Nursing Home & Hosp. Union 434 v. Sky Vue Terrace, Inc., 759 F.2d 1094, 1098 (3d Cir.1985); Local Lodge 1266 v. Panoramic Corp., 668 F.2d 276, 283 (7th Cir.1981); Lever Bros. Co. v. International Chem. Workers Local 217, 554 F.2d 115, 122 (4th Cir.1976).[3]
To obtain a preliminary injunction, the movant must show: "`(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" American Postal Workers Union v. United States Postal Serv., 766 F.2d 715, 721 (2d Cir.1985), cert. denied, 475 U.S. 1046, 106 S.Ct. 1262, 89 L.Ed.2d 572 (1986) (quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979)). Because the present case involves conduct subject to arbitration, in addition to these traditional requirements for a preliminary injunction, the movant must also show that the injunction is "necessary to preserve the jurisdiction of the arbitrator or as an aid to arbitration." American Postal Workers Union, 766 F.2d at 722 (citing Brotherhood of Locomotive Eng'rs. v. Missouri-Kansas-Texas R.R. Co., 363 U.S. 528, 534, 80 S.Ct. 1326, 1330, 4 L.Ed.2d 1379, reh'g denied, 364 U.S. 854, 81 S.Ct. 31, 5 L.Ed.2d 78 (1960)).
The Association has satisfied all of these requirements.

*192 1. Irreparable Harm

An injunction may issue only if the moving party can establish that it will suffer irreparable injury absent injunctive relief. Boys Markets, 398 U.S. at 254, 90 S.Ct. at 1594. Irreparable injury is defined as that which would render the arbitral process "a hollow formality," Lever Bros., 554 F.2d at 123, or as an injury that would undermine the integrity of the arbitral process insofar as the eventual outcome would only be an "empty victory." Brotherhood of Locomotive Eng'rs., 363 U.S. at 534, 80 S.Ct. at 1330.
The question before the court is not whether the proposed action will interfere with the arbitration process but rather whether the disputed action will make it impossible for the arbitrator to award an adequate remedy. Amoco, 885 F.2d 697. The irreparable harm must be viewed in the context of the nature of the dispute. The present underlying dispute centers around the format of a meeting designed to promote communication and the exchange of ideas between the Institute and the Association. The harm alleged from the change in format concerns the dynamics of the meeting, the range of the freedom of expression, and the channeling of that expression to the Institute.
The Association contends that the proposed changes are both an affront to the institution of Shunin-kai and a ploy by the Institute to restrict the Association's freedom to express and to receive opinions and information on matters of school-wide concern. The Association argues that at those regional locations where the Chair of the Association cannot attend the members will be deprived of their Shunin leadership and at those locations where the Principal cannot attend the membership will be denied collective access to the head of the Institute. Moreover, the reduction by two-thirds of the numbers of teachers present is said to have a correlative reduction in the perception of safety in numbers which in turn may diminish Shunin willingness to express views to the management. Finally, the Association contends that the split meetings will aggravate teacher commuting because those teachers who live in Manhattan and finish teaching at 12:55 will have to wait hours or else commute twice to attend their respective regional meetings.
The Institute characterizes the plan as a mechanism of convenience that ultimately will lead to more productive meetings. The change in format is designed to "facilitate communication and achievement of the goals of the Institute and the Shunin-kai" by providing for smaller discussion groups that can address regional "special concerns and problems" and by reducing the travel time required to reach Manhattan.
The Institute argues that the potential chilling of speech resulting from the different meeting format is too speculative to be considered a harm, and that because the meetings will take place, communication will still exist and thus no irreparable harm can result to the Association. Indeed the Institute attempts to distinguish this case from other reverse Boys Markets cases by characterizing the present underlying dispute as a "run-of the-mill" grievance and other cases where injunctions issued as "drastic" scenarios. Moreover, the Institute contends that should the arbitrator find the proposed Institute action to be prohibited under the Agreement, the original format of the meeting can be reinstituted and therefore there is no irreparable harm to the Association.
A finding of irreparable harm, however, does not turn on the "drastic" nature of the proposed employer action nor on the reversibility of the proposed action. See, e.g. Amoco, 885 F.2d 697 (discussing wide range of types of irreparable injury). The traditional irreparable harm requirement for an injunction focuses on the nature of the harm, not on the nature of the action. See, e.g., id. The test is whether an arbitrator can fashion an adequate remedy to return the parties to status quo ante, and thus a minor or nondrastic change, as well as a reversible action, can both produce an irreparable harm.
Without a preliminary injunction, the Institute will proceed with the implementation of the format change and hold *193 monthly meetings in three locations until the arbitration process resolved the dispute over whether such change in format is permitted under the Agreement. To the extent that the dynamics of these monthly discourses differ in the multiple fora from the discussions that would have been held in the traditional forum, the Association is irreparably harmed. An arbitrator cannot adequately remedy the changed dynamics of a meeting already held. Even were the meeting to be reconvened, the arbitrator cannot "turn back time" and the discussion that would have been over the events of each month cannot be recaptured.
This inability to redress adequately a discussion that "should have been" is most clearly demonstrated in Lever Bros. Co. v. International Chem. Workers Local 217, 554 F.2d at 118-19. In Lever Bros. the arbitrable issue concerned whether the company had the right to relocate its plant. Id. at 118. The labor union argued that a preliminary injunction was necessary to protect its contractual right to arbitrate grievance. Id. at 119. The Fourth Circuit upheld the injunction preventing the plant relocation because had the union prevailed in arbitration the Company would have had to provide discussion regarding the company's proposed plant transfer. Id. The Lever Court issued the injunction to insure the maintenance of the status quo until arbitration could be completed. Id.
A meeting already held, just like a plant already moved, presents an arbitrator with a deed already done. The inability to recreate the discussion that would or should have been constitutes the irreparable harm. See Amoco, 885 F.2d 697 (clarifying that irreparable injury in Lever Bros. was not plant relocation but that discussion not held prior to relocation).
Because the Institute need not adopt recommendations arrived at in the course of the monthly meetings, the function of the Shunin-kai turns not on the ultimate outcome of those discussions, but rather on what is said at the meetings, how it is said, who hears what is said, how it was heard, and what further speech or action is kindled by this discourse. Should the meetings be held in a new format, altering the status quo, the Association will suffer irreparable harm.
This finding of irreparable harm, however, results from an assessment of the potential adequacy of the arbitrator's remedy. The factual inquiry is wholly distinct from, and not intended to bear upon, the arbitrator's subsequent examination of the merits of the underlying dispute. See Panoramic, 668 F.2d at 285.

2. Likelihood of success on merits/questions going to the merits and the balance of hardships

A traditional inquiry into the likelihood of success on the merits would encroach upon the role of the arbitrator and thus in labor disputes courts prefer to focus on the alternate requirement for preliminary relief. See Panoramic, 668 F.2d at 285. 428 U.S. at 410-11, 96 S.Ct. at 3149. Because both parties agree that the underlying dispute is subject to arbitration, the Association must only show that the balance of hardships favors the issuance of the injunction. The Association has met successfully this requirement.
The irreparable harm the Association would suffer should this injunction not issue is set forth above. The Institute, however, will not meet with undue hardship should this injunction issue. The Institute has tolerated the present format of the Shunin-kai for over a decade, and in the course of the summer's events the Institute initially agreed to delay the proposed implementation until the pending the arbitration was resolved. Evidently the Institute has been able to endure the present format and the delay in implementation will present no undue burden that can compare to the harm suffered by the Association. The balance of hardships decidedly favors the Association.

3. Jurisdiction/frustration of arbitration

The consideration of jurisdiction and the frustration-of arbitration requirement hinges upon a finding of irreparable harm. Amoco, 885 F.2d 697 (irreparable injury *194 inquiry coincides with frustration-of-arbitration analysis used to determine applicability of Boys Markets exception); see Panoramic, 668 F.2d at 286 (most courts "focus into a single concept the twin ideas of irreparable injury and frustration of arbitration"). The irreparable harm set forth above indicates that jurisdiction is proper because the arbitral process will be preserved by preventing injuries that could not be addressed adequately through an arbitral award.

Conclusion
On the facts and conclusions set forth above, the Association's request for a preliminary injunction is granted and the terms of the temporary restraint are hereby continued on the preliminary injunction including the security.
It is so ordered.
NOTES
[1] Article XV of the Agreement provides that:

In addition to other functions and responsibilities not specifically mentioned in this Agreement, and subject to the limitation contained in this Agreement, the management and direction of the Weekend School, the promulgation of rules and regulations governing the administration of the school, and the direction of the Teachers, including, but not limited to, the right to hire, supervise discipline or discharge for just cause, assign work, transfer Teachers, adopt new or changed methods of performing work, establish the number and location of classes, and the right to lay-off Teachers because of lack of work or for other reasons beyond the Institute's control, is vested exclusively in the Institute.
[2] Article XVII of the Agreement provides in relevant part:

Grievances and Arbitration
A. A dispute or grievance arising between the parties hereto which involves the interpretation or application of any clause of this Agreement, may be referred by either party to the grievance and arbitration procedures of this Article.
B. Step 1: The Dispute or grievance which concerns one district shall be initially discussed between the Administrative [sic] Teacher assigned to the district and a designated Association representative.
Step 2: If the dispute or grievance cannot be satisfactorily adjusted at Step 1, the Principal and the assigned Association officer shall meet to attempt to resolve the matter within thirty days of the filing of the grievance.
C. If the dispute or grievance is not resolved at Step 2, either party may notify the other party within thirty days of its intent to have the matter arbitrated hereunder. In such case, the matter shall be submitted to final and binding arbitration before either (1) the New York State Mediation Board, or (2) the American Arbitration Association, at the option of the moving party in accordance with the respective Rules and Regulations of such Mediation Board or Arbitration Association.
[3] The Institute reads Buffalo Forge Co. v. United Steelworkers of Am., 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), to prohibit a preliminary injunction for disputes over whether a contract has been violated. The Court in Buffalo Forge denied an injunction because it was for the arbitrator, and not the courts, to decide whether a sympathy strike, a non-arbitrable dispute, arguably violated the contract's no-strike clause. Id. at 409-10, 96 S.Ct. at 3148-49 (emphasis added). Buffalo Forge thus narrowed the Boys Markets decision by limiting the Boys Markets exception to the Norris-LaGuardia Act to only non-arbitrable issues. See id. at 407, 96 S.Ct. at 3147. Buffalo Forge does not imply that injunctions are discouraged in every dispute involving a contract violation. Such a reading would eliminate reverse Boys Markets exceptions, an outcome contrary to most readings of Buffalo Forge. See Panoramic Corp., 668 F.2d 276, 280 (1981).