**DISTRICT 17, UNITED MINE WORKERS OF AMERICA; Local Union 5958, United Mine Workers of America, Plaintiffs–Appellees,**

v.

**APOGEE COAL COMPANY, a/k/a Arch of West Virginia, Incorporated, a corporation, Defendant–Appellant,**

**and**

**Arch Mineral Corporation, a corporation, Defendant.**

No. 93–1595.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 7, 1993.

Decided Dec. 30, 1993.

Forrest Hansbury Roles, Smith, Heenan & Althen, Charleston, WV, argued (Lynn M. Rausch, Smith, Heenan & Althen, Washington, DC, on brief), for defendant-appellant.

Michael F. Niggemyer, Charleston, WV, argued (Charles F. Donnelly, on brief), for plaintiffs-appellees.

Before MURNAGHAN, WILKINSON, and WILKINS, Circuit Judges.

## OPINION

WILKINS, Circuit Judge:

Apogee Coal Company (Apogee) appeals a preliminary injunction entered by the district court, enforcing during the pendency of this litigation an arbitration award entered following arbitration between Apogee and District 17, United Mine Workers of America (the Union). Because we find that the district court erred in failing to apply the provisions of the Norris–LaGuardia Act, 29 U.S.C.A. §§ 101–15 (West 1973 & Supp. 1993), in determining whether a preliminary injunction was warranted, we vacate and remand for further proceedings. On remand, we instruct the district court to expeditiously rule on the merits of the propriety of enforcing the arbitration award.

### I.

Apogee is engaged in the production of bituminous coal in West Virginia; its employees are represented by the Union under a collective bargaining agreement. In February 1991, while employed by Apogee as a bulldozer operator, James McCoy sustained disabling leg, back, and neck injuries in the course of his employment. By early 1992, the West Virginia Workers' Compensation Division had decided to terminate McCoy's workers' compensation benefits because he had reached his maximum degree of medical improvement; however, McCoy was not yet able to return to his former position. His treating physician had not released him to return to work, and he continued to complain that numbing in one of his legs periodically caused it to collapse. Acting pursuant to Article IA, section (d) of the collective bargaining agreement, which vests Apogee with the exclusive authority to discharge employees, Apogee notified McCoy of its intent to terminate him. McCoy filed a grievance objecting to his termination.

The collective bargaining agreement provides that disputes between the parties are to be resolved by utilizing specified grievance procedures, not by resort to litigation. When the parties are unable to settle their differences in the early stages of the grievance proceedings, those procedures culminate in a hearing of the grievance before an arbitrator. Article XXIII, section (c)(4), of the collective bargaining agreement provides that the decision of the arbitrator "shall be final." In January 1993, the arbitrator issued an order finding that Apogee must afford McCoy an opportunity to report for work and perform his previous duties. If he could not, Apogee's termination would be upheld, but if he could perform his prior duties, McCoy would be reinstated with back pay.

Upon receipt of the arbitration award, McCoy immediately obtained a release from his physician. However, when McCoy reported for work with the required release, Apogee refused to permit him to resume his position. Based on discussions with McCoy's physician, Apogee asserted that McCoy would pose a safety hazard to himself and others if he resumed his former duties.

Thereafter, negotiations for an amicable resolution ended, and Apogee brought this action to set aside the arbitration award pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185 (West 1978), on the basis that it did not draw its essence from the collective bargaining agreement. Before service of process of Apogee's

action was effected, the Union filed a complaint seeking to enforce the arbitration award.[1] In addition, the Union requested a temporary retraining order (TRO) and a preliminary injunction to enforce the arbitration award pending a final decision on the merits. Following a conference in chambers, the district court entered a TRO enforcing the arbitration award. Subsequently, Apogee moved to dissolve the TRO, arguing that the district court had erred in entering it without conducting an evidentiary hearing or making findings of fact and conclusions of law. The district court promptly conducted an evidentiary hearing during which the parties were permitted to present and cross-examine witnesses. It ultimately refused to dissolve the TRO and concluded that any objection to the procedure it had previously followed was moot.

The following week, the district court once again conducted an evidentiary hearing—this time on the preliminary injunction. By agreement, the district court considered the evidence offered in connection with the TRO, and the parties offered the testimony of several other witnesses. The district court requested, and the parties submitted, proposed findings of fact and conclusions of law. On April 14, 1993, the court granted the Union's request for a preliminary injunction, adopting practically verbatim the proposed order submitted by the Union. Apogee appeals from this order.

## II.

The Norris–LaGuardia Act provides in pertinent part, "No court of the United States ... shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C.A. § 101 (West 1973). In *District 17, United Mine Workers v. A & M Trucking, Inc.*, 991 F.2d 108, 109–11 (4th Cir.1993), this court held that a district court must comply with the provisions of the Norris–LaGuardia Act prior to issuing an injunction enforcing an arbitration award arising out of a labor dispute. Relying on *A & M Trucking*, Apogee argues that because the district court failed to make the findings required by § 7 of the Norris–LaGuardia Act,[2] the injunction it imposed must be vacated. The Union does not dispute that the district court was required to comply with the provisions of the Act. Rather, it maintains that the district court properly applied the provisions of the Norris–LaGuardia Act.

■ We disagree. A fair reading of the decision of the district court leads us to conclude that it rejected application of the Norris–LaGuardia Act; the district court ruled, as it did in *A & M Trucking*, that issuance of the injunction without compliance with the provisos of the Norris–LaGuardia Act was proper because the exception to the Act recognized by this court in *Lever Brothers Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir. 1976), was applicable.[3] Further, we note that the district court purported to apply the

---

1. These two actions were subsequently consolidated before the district court.

2. Section 7 of the Act provides that before a court may enter an injunction in a case arising out of a labor dispute it must make factual findings to the effect:

    (a) That unlawful acts have been threatened and will be committed unless restrained or have been committed and will be continued unless restrained[;] ...

    (b) That substantial and irreparable injury to complainant's property will follow;

    (c) That as to each item of relief granted greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by the granting of relief;

    (d) That complainant has no adequate remedy at law; and

    (e) That the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection.

    29 U.S.C.A. § 107 (West 1973).

3. The order of the district court states in pertinent part:

    This Court has jurisdiction over this action pursuant to § 301 of the Labor–Management Relations Act of 1947. There is a national labor policy favoring arbitration notwithstanding the provisions of Norris–LaGuardia. The Fourth Circuit has held that the *Boys Markets* [*Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970)] exception to the anti-[injunction] provisions of the Norris–LaGuardia Act (29 U.S.C. § 101)

general standard applicable for determining the appropriateness of a preliminary injunction set forth in *Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co.*, 550 F.2d 189, 196 (4th Cir.1977), rather than the standard set forth in the Norris–LaGuardia Act. The factors enunciated in *Blackwelder* are applicable in determining the appropriateness of an injunction under the Norris–LaGuardia Act, but the two tests are not co-extensive because the Act imposes additional requirements. *Compare Blackwelder*, 550 F.2d at 196 *with* 29 U.S.C.A. § 107. The decision of the district court fails to set forth express findings on the additional factors contained in § 7 of the Act. Accordingly, we conclude that the district court applied an incorrect legal standard and failed to comply with the requirements of the Norris–LaGuardia Act. We, therefore, vacate its decision and remand for further proceedings.[4]

### III.

Because further proceedings will be required on remand, we address for the benefit of the district court an issue that came to our attention during oral argument. In response to questions by this court, the parties stated that since the district court ruled on the preliminary injunction in April 1993—over eight months ago—no further action has been taken to resolve the merits of the enforceability of the arbitration award. The Union maintains that in agreeing to submit

disputes with Apogee to arbitration, it bargained for a swift and sure method for resolving disputes in lieu of strike or resort to judicial intervention. It asserts that in refusing to abide by the arbitration decision once rendered, Apogee has deprived it of the benefit for which it bargained. Thus, facing an extended delay before the district court would finally rule on the enforceability of the arbitration award, the Union believed that it had no choice but to seek an order enforcing the award in the interim. Although acknowledging the efficacy of arbitration as a means for resolving disputes, Apogee asserts that it may seek to have the award set aside in a limited number of circumstances, at least one of which it contends is present here. In our view, the tension created by these competing interests is not best resolved through the entry of a preliminary injunction. Rather, the parties desire and are entitled to finality in a timely manner.

The singular importance of arbitration as a method for resolving labor disputes has been recognized repeatedly by the courts and Congress. *Richmond, Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union*, 973 F.2d 276, 278 (4th Cir.1992). "By submitting a dispute to arbitration, labor and management can secure a decisive resolution of their differences without the delay inherent in litigation or the disruption of a strike or lockout." *Id.* Arbitration cannot accomplish these purposes,

---

empowers district courts to grant injunctive relief against an employer to enjoin conduct which would render the arbitrable process a hollow formality. *Lever Brothers Co. v. Int'l Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir.1976). Although *Lever Brothers* and its progeny involved the issuance of injunctions to preserve the status quo pending the decision of an arbitrator, their reasoning is no less compelling in a case such as the one before the Court where the arbitrator has issued a decision and the company has refused to adhere to that decision, thus making the arbitral process a "hollow formality."

Apparently recognizing, based on the decision of this court in *A & M Trucking*, that the present facts do not present the type of compelling circumstances required by *Lever Brothers*, the Union does not argue that the *Lever Brothers* exception actually applies. Instead, it asserts, despite the above language, that the district court applied the provisions of the Norris–LaGuardia Act.

**4.** This court, as well as the Supreme Court, has consistently disapproved of the practice of a district court adopting proposed findings of fact and conclusions of law submitted by the prevailing party. *See, e.g., United States v. Crescent Amusement Co.*, 323 U.S. 173, 184–85, 65 S.Ct. 254, 260, 89 L.Ed. 160 (1944); *E.E.O.C. v. Federal Reserve Bank of Richmond*, 698 F.2d 633, 640–41 (4th Cir.1983) (collecting cases), *rev'd on other grounds sub nom. Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984). A comparison of the proposed opinion submitted by the Union, with the memorandum opinion issued by the district court, reveals that the district court adopted the Union's proposed opinion with only a few minor changes. Because it is necessary to vacate the decision of the district court for its failure to apply the appropriate legal standard, we are not called upon to consider whether the findings of fact contained in the decision of the district court could withstand appellate scrutiny.

however, if the courts do not afford finality to the arbitrator's decision. *Id.* Moreover, finality must follow swiftly if arbitration is to continue to afford an efficient resolution of disputes.

In order to further these goals, "judicial review of an arbitration award is 'among the narrowest known to the law.'" *Id.* (quoting *Union Pac. R.R. Co. v. Sheehan,* 439 U.S. 89, 91, 99 S.Ct. 399, 401, 58 L.Ed.2d 354 (1978)). And, due to the extremely limited nature of permissible judicial review, proceedings to enforce arbitration awards, or to determine whether they should be set aside, frequently will lend themselves to expeditious consideration. Indeed, typically such petitions may be resolved promptly on motions for summary judgment based on the record from the arbitration proceedings without the necessity of discovery.

█ The proceedings through which this litigation has thus far advanced are inimical to the goals of arbitration. The district court in all likelihood would have utilized significantly less of its own resources, and those of the parties, had it simply set this matter for a determination on the merits straightaway, rather than laboring through the procedures necessary to determine the appropriateness of a temporary restraining order and preliminary injunction.[5] Thus, we instruct the district court to set this matter for hearing within 30 days and to issue its decision as quickly thereafter as practicable. If arbitration is to continue to hold the significant position it now possesses, judicial enforcement of the decision, or a determination that the award should be set aside, must follow surely and swiftly.

*VACATED AND REMANDED WITH INSTRUCTIONS—LET THE MANDATE ISSUE FORTHWITH.*

---

**5.** *That is not to say, of course, that cases may not come before the district court which will require discovery and more prolonged consideration. Nor do we intend to intimate that the district court may ignore its duty to rule on appropriate requests for temporary restraining orders or pre-* liminary injunctions. *Our point is that, typically, district courts should establish an expedited schedule for consideration of petitions to enforce or set aside arbitration awards that will obviate the need for parties to seek preliminary relief.*