**GULF COAST INDUSTRIAL WORKERS' UNION, Plaintiff-Appellee,**

v.

**EXXON COMPANY, U.S.A. and Exxon Chemical Company, U.S.A., Defendants-Appellants.**

No. 82–2312.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1983.

W.N. Blanton, III, Douglas K. Magary, Richard E. Black, Houston, Tex., for defendants-appellants.

Orsburn & Associates, Charles C. Orsburn, Houston, Tex., for plaintiff-appellee.

Before GEE, REAVLEY and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge.

The issue for decision concerns the power of a federal court to preserve a status quo by injunction pending the arbitration of a labor dispute.

## Facts

A brief factual statement will suffice, since for present purposes it is not the details of the facts that signify but rather the broad categories into which they fall. Appellee Gulf Coast Industrial Workers' Union ("Union") is the certified bargaining representative of over 1,500 production and maintenance workers at a refinery and a chemical plant operated at Baytown, Texas, by the appellant Companies, divisions of the Exxon Corporation.

Since the 1960s, the collective bargaining agreement between the Union and the Companies has contained the following language:

> The Company agrees to pay the insurance carrier selected by the Union and acceptable to the Company for hospital, surgical and medical insurance while such contract is in force. . . .

In 1976, Mutual of New York was selected by the Union and approved by the Companies, and it remains so today. Premiums covering the Union's medical plan are paid by the Companies up to a given amount per employee, with any excess paid by the employee himself. Company contributions cover over ninety percent of the premium payments.

In 1980 contract negotiations the Union sought to add dental and vision (eyeglass) coverage to the plan. A dental plan was included, but the demand for a vision plan was resisted by the Companies and abandoned by the Union. Some five months after the contract went into effect, however, the Union unilaterally amended the plan to include a modest vision coverage which did not cause an increase in premium payable. In response, the Companies advised the Union that unless the vision plan, added without its consent, was dropped, it would withdraw its approval of the insurance carrier. Strenuous but futile efforts were made to resolve the dispute, and the Companies at last set a deadline of April 30, 1982, for withdrawal of their approval of the carrier. With this, the Union demanded arbitration and that process commenced.

Three days before the deadline, the Union filed this suit. A preliminary injunction, the subject of this appeal, was issued by the trial court forbidding disapproval of the carrier pending the outcome of arbitration. While this appeal was pending, but before submission, the arbitrator entered an award in favor of the Union for reasons that need not concern us here.[1] We conclude that the trial court did not apply proper principles in entering the injunction.

### Analysis and Discussion

The order of the district court proceeds along traditional equity lines, analyzing the relative benefits and detriments to the parties and the like without reference to the character of the underlying controversy as a labor dispute.[2] Since that character is determinative of the appeal, we need not consider whether the injunction entered would have been appropriate in another sort of case. Where labor disputes are concerned, the starting point in considering entry of any injunction must be the severe general limitations—and the narrow exceptions to these limitations—placed on the injunctive power by Congress. Although our holding rests directly on the authority of *Buffalo Forge Co. v. United Steelworkers,* 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), a brief sketch of the historical background in this area of the law may be helpful.

In the depths of the Great Depression Congress passed the Norris-LaGuardia Act, 29 U.S.C. §§ 101–115, prohibiting United States courts in categorical and jurisdictional terms from interfering in labor disputes by means of injunctions against a variety of enumerated acts, one so wide as to comprise almost the entire arena of industrial contests. Later, in 1947, it enacted the Labor Management Relations Act, Section 301(a) of which authorized district courts to enter-

tain suits for violation of labor contracts. 29 U.S.C. § 185(a). So ingrained in federal labor law was the reluctance of courts to interfere by injunction in labor controversies, however, that the Supreme Court at first refused to give full effect to the new enactment. In *Sinclair Refining Co. v. Atkinson,* 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962), it held that the anti-injunction provisions of Norris-LaGuardia precluded the enforcement of a no-strike clause by injunction even though the very collective bargaining agreement in which it appeared also contained a provision, enforceable under Section 301(a), for binding arbitration of the grievance over which the strike was called. Eight years later, however, it repented and recanted.

*Boys Markets, Inc. v. Retail Clerks Union,* 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), overruled *Sinclair* and opened the first narrow exception to the Norris-La-Guardia prohibition. Accomodating the seemingly absolute literal terms of Norris-LaGuardia to the subsequently enacted ones of Section 301(a) and the purposes of arbitration, it held the exact reverse of *Sinclair.* Writing for a majority of six and citing at length to his *Sinclair* dissent, Justice Brennan held that where the strike sought to be enjoined is over a grievance that both sides are contractually bound to arbitrate, a court may enter an injunction otherwise warranted under ordinary principles of equity and ordering the employer to arbitrate as a condition of his obtaining the anti-strike injunction. Four years after *Boys Market,* a unanimous Court (on this point) read it as standing for the proposition that "§ 301(a) empowers a federal court to enjoin violations of a contractual duty not to strike." *Gateway Coal Co. v. United Mine Workers,* 414 U.S. 368, 381, 94 S.Ct. 629, 638, 38 L.Ed.2d 583 (1974). There the matter rest-

---

1. The Union argues that this event moots the case. We disagree; the Union may again seek a preliminary injunction pending arbitration. The issue is therefore clearly "capable of repetition, yet evading review." *Pittsburg Newspaper Printing Pressman's Union v. Pittsburg Press Co.,* 479 F.2d 607, 609 n. 1 (3d Cir.1973),

*citing Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and other authorities.

2. Although a comparatively ethereal one. The Union does not contend that it is not such a dispute.

ed until *Buffalo Forge* was handed down.[3] We turn to it as the last word on the subject.

The issue in *Buffalo Forge* was similar in principle to that we face today: "whether a federal court may enjoin a sympathy strike pending the arbitrator's decision as to whether the strike is forbidden by the express no-strike clause contained in the collective bargaining contract to which the striking union is a party." 428 U.S. at 399, 96 S.Ct. at 3143. The production and maintenance employees' contract under examination there contained a comprehensive no-strike clause. It recited, in part: "There shall be no strikes, work stoppages or interruption or impeding of work." *Ibid.* Nothing in the rest of the clause limited the sweep of this language. Another clause provided, in pertinent part, that "should any trouble of any kind arise in the plant, there shall be no suspension of work," but rather arbitration. *Id.* at 400, 96 S.Ct. at 3144. Nevertheless, when office and technical employees struck the plant, the production and maintenance employees went out in a sympathy strike. The company offered to arbitrate any dispute, citing the no-strike clause. A district court refused to enjoin the strike, holding that since it was not over an arbitrable grievance the narrow exception of *Boys Market* to Norris-LaGuardia did not apply. The Second Circuit affirmed on the same ground, and the Supreme Court, noting a division among the Courts of Appeals on the point, took the case. 428 U.S. at 404 n. 9, 96 S.Ct. at 3146 n. 9.

Observing that neither the causes nor the issue underlying the strike were subject to the contract's arbitration clause, so that the strikers had not evaded their obligation to arbitrate or deprived the employer of his bargain by striking, the Court affirmed. Although it recognized that the question whether the sympathy strike violated the no-strike clause was arbitrable, it held that Norris-LaGuardia forbids enjoining even such an arguable violation of the contract as this pending arbitration. It then observed, significantly for our present purposes:

> The dissent suggests that injunctions should be authorized in cases such as this at least where the violation, in the court's view, is clear and the court is sufficiently sure that the parties seeking the injunction will win before the arbitrator. But this would still involve hearings, findings, and judicial interpretations of collective-bargaining contracts. It is incredible to believe that the courts would always view the facts and the contract as the arbitrator would; and it is difficult to believe that the arbitrator would not be heavily influenced or wholly preempted by judicial views of the facts and the meaning of contracts if this procedure is to be permitted. Injunctions against strikes, even temporary injunctions, very often permanently settle the issue; and in other contexts time and expense would be discouraging factors to the losing party in the court in considering whether to relitigate the issue before the arbitrator.
>
> With these considerations in mind, *we are far from concluding that the arbitration process will be frustrated unless the courts have the power to issue interlocutory injunctions pending arbitration in cases such as this or in others in which an arbitrable dispute awaits decision.* We agree with the Court of Appeals that there is no necessity here, such as was found to be the case in *Boys Markets,* to accommodate the policies of the Norris-LaGuardia Act to the requirements of § 301 by empowering the District Court to issue the injunction sought by the employer.

428 U.S. at 412–13, 96 S.Ct. at 3149–50 (emphasis added).

■ Thus, after *Buffalo Forge*, the state of the law regarding such preliminary, status quo injunctions as that under review

---

**3.** For the benefit of those attending without a program, we note that *Buffalo Forge* was written by Justice White, who joined the opinion in *Sinclair* and dissented from *Boys Market.* The dissent was joined by Justice Brennan, who wrote *Boys Market* and dissented from *Sinclair.*

seems to be that while strikes over arbitrable grievances can be enjoined—where the bargaining agreement contains an agreement to arbitrate them and not to strike—so as to enforce the agreement of the parties about how such grievances are to be resolved, a different rule obtains where, as here, the parties' agreement does not both specify arbitration as the means of resolving the dispute in question and forbid self-help by strike or other economic weapon. That rule appears to be that only where the arbitration process to which the parties have agreed will be frustrated or rendered nugatory by one party's self-help measure will use of that measure be enjoined—and only then when the injunction is otherwise warranted under ordinary principles of equity.[4]

Such an approach is suggested, though scarcely compelled, by the language which we have emphasized in the quotation from *Buffalo Forge* set out above, and several circuits have adopted it. *International Union v. Dana Corp.*, 679 F.2d 634 (6th Cir. 1982); *Local Lodge 1266, International Ass'n of Machinists v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981); *Lever Brothers Co. v. International Chemical Workers*, 554 F.2d 115 (4th Cir.1976). Reason as well, and the general thrust of *Boys Market* and *Buffalo Forge*, suggest that while a court may act to enforce the parties' agreement to resolve a given issue by arbitration rather than by self-help, Norris-LaGuardia demands that its action do no more than this and do so as narrowly as possible. We adopt the suggested approach.

■ Since, however, the arbitration is concluded here, we see no occasion for a painstaking consideration of whether the

Companies' threatened self-help measure would necessarily have rendered "the arbitration process a hollow formality...." *Lever Brothers, supra,* at 123. Nor, for the same reason, is there occasion for a remand for the district court to apply correct principles in determining whether to issue the preliminary injunction. Since it did not do so in entering the order appealed from, that order is

VACATED.

---

**4.** Some courts have looked to the presence or absence of an implied agreement to preserve the status quo during arbitration. *Transit Union v. Greyhound Lines, Inc.*, 529 F.2d 1073 (9th Cir.), *vacated and remanded* 429 U.S. 807, 97 S.Ct. 43, 50 L.Ed.2d 68, *reversed* 550 F.2d 1237 (9th Cir.1977), *cert. denied* 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977). We do not entirely reject that approach in a proper case. Adding implied undertakings to such a hard fought out, complex and specific thing as a collective bargaining agreement—where bar-

gaining over what is to be omitted is likely to be fully as strenuous as that over what is included—is a parlous business, however, and one inviting arbitrary court action. Only in a very clear case might such a course be justified. We prefer the approach adopted in the text above as being more objective, more even-handed, and more in accord with the spirit of Norris-LaGuardia and Taft-Hartley of leaving the parties to self-help except where they have plainly agreed to be governed otherwise.