LOCAL UNION NO. 733 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, Plaintiff–Appellant,

v.

INGALLS SHIPBUILDING DIVISION, LITTON SYSTEMS, INC., Defendant–Appellee.

No. 89–4659.

United States Court of Appeals, Fifth Circuit.

July 18, 1990.

---

**150**

Dixon L. Pyles, Pyles & Tucker, Jackson, Miss., for plaintiff-appellant.

Karl Wiesenburg, French Caldwell, Pascagoula, Miss., for defendant-appellee.

Before CLARK, Chief Judge, GARWOOD and DAVIS, Circuit Judges.

CLARK, Chief Judge:

Plaintiff Local 733 of the International Brotherhood of Electrical Workers (union) appeals the district court's denial of a preliminary injunction against defendant-employer Ingalls Shipbuilding Division, Litton Systems, Inc. (Ingalls or company). Ingalls unilaterally implemented a drug and alcohol testing program—an action which the parties agree was subject to arbitration under their collective bargaining agreement. To maintain the status quo, the union sought to restrain the program's implementation until its validity could be resolved through arbitration. Because the district court did not abuse its discretion by denying the injunction, we affirm.

I

The union represents 777 workers at Ingalls' shipbuilding plant in Pascagoula, Mississippi. The governing agreement, which expired on February 4, 1990, contains a standard general arbitration article as well as no-strike, no-lockout clauses. The agreement's management-functions clause states that the company may establish, modify and enforce rules to assure orderly, safe and efficient plant operations so long as the rules are not inconsistent with other provisions of the agreement. The company also was authorized to discipline an employee for violating a rule so long as the rule had been published. The agreement specifically provides that the union shall have the right to challenge the reasonableness of such rules through the grievance-arbitration procedure.

Before April 1989 the company rules on alcohol and drug abuse provided simply that any employee found possessing or under the influence of either on the work site would be subject to discharge. After conducting unsuccessful informal negotiations with the union to strengthen the policy, the company promulgated in March 1989 the subject drug and alcohol testing program to take effect in April 1989. Under the plan, the following persons are subject to testing: (1) all otherwise qualified job applicants; (2) employees returning after a layoff of more than 90 days; (3) employees involved in accidents occurring anywhere if the accident could result in a "job-related lost time injury" requiring a doctor's attention; (4) employee drivers involved in an accident on company property or off company property while on company business; (5) employees causing or contributing to an accident resulting in a potential lost-time injury requiring a doctor's attention; (6) employees involved in an accident causing over $500 property damage; and (7) any employee "[f]or cause—behavior that causes reasonable grounds to believe that the employee might be impaired or influenced by a substance." Employees, their personal automobiles and the company property they use on the job are all subject to search under the program. Both management and employees are subject to the rules. Persons testing positive are required to take a leave of absence during which counseling and a "reasonable opportunity to return to a drug-free status" are provided. Repeated positive test results subject the person to discharge.

Violations of the policy include: (1) reporting for work under the influence of drugs or alcohol; (2) possessing, using, selling or delivering drugs or alcohol on company premises at any time or during work-time off company premises; (3) refusing to submit to a drug test or search of person or property when a supervisor has a

reasonable basis for suspecting the employee has violated the policy (which refusal creates a presumption of possession or use); (4) violating the terms of an "after-care" program or refusing to submit to unscheduled tests during an after-care program.

The union filed a grievance against the plan in May 1989, challenging many of its specific aspects. When the company refused to delay implementation of the plan pending arbitration, the union filed suit in the district court seeking a temporary restraining order and a preliminary injunction against its implementation to preserve the status quo pending the outcome of arbitration. The grievance was formally submitted to arbitration several days after the action was filed. The company agrees that the grievance against the plan is arbitrable under the bargaining agreement. The record does not reveal the status of the arbitration.

In the district court, the union claimed that the plan was harsh and oppressive, creating an atmosphere of fear and intimidation on the work site, and that it unwarrantedly controlled employees' private lives. The union argued that the plan threatened irreparable harm to the workers' careers and livelihood and jeopardized their reputations. The union further argued that the plan violated section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, by requiring discipline of addicted persons for reasons independent of inadequate job performance.

The district court denied the injunction and granted the company's motion to dismiss, holding that the union failed to meet the requirements for equitable relief. The court reasoned that the duty to arbitrate does not include the duty to preserve the status quo unless the company specifically agreed to do so in the collective bargaining agreement. Since the agreement contained no such clause, the court concluded that the arbitral process would not suffer irreparable harm. The court further found that the union failed to establish that the employees would suffer irreparable harm if the injunction was denied. The court relied on *International Brotherhood of Teamsters v. Southwest Airlines*, 875 F.2d 1129 (5th Cir.1989) (en banc), *cert. denied*, —— U.S. ——, 110 S.Ct. 838, 107 L.Ed.2d 834 (1990), decided under the Railway Labor Act (RLA), where we held that the unilateral implementation of a drug testing program was a "minor dispute" under the collective bargaining agreement at issue, not warranting a finding of irreparable harm. The district court also held that the Rehabilitation Act was inapplicable because, in its view, 29 U.S.C. § 706(8) exempts drug and alcohol testing programs from the purview of the Act.

## II

In this court the union contends that because the parties' relationship is not governed by the Railway Labor Act (RLA), the district court erred by relying on *Southwest Airlines*, an RLA case, to conclude that union members would not suffer irreparable harm through the company's unilateral imposition of the drug testing program. The union also argues that by denying the injunction to preserve the status quo pending arbitration of the question, the court denied the union an effective remedy, thereby abusing its discretion.

## III

The prerequisites for a preliminary injunction are well settled. The plaintiff must show: (1) a substantial likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is not granted; (3) that the harm the plaintiff will suffer if the injunction is not granted would outweigh the harm to the defendant if the injunction were granted; and (4) that the grant of the injunction will not disserve the public interest. *Jacksonville Maritime Ass'n, Inc. v. International Longshoremen's Ass'n*, 571 F.2d 319, 322–23 (5th Cir.1978). The decision to grant the injunction lies within the discretion of the trial court and will be reversed only if that discretion is abused. *Id.* at 322.

A court's discretion to issue a preliminary injunction in the labor-management context, however, is significantly circum-

scribed by federal law. The Norris-La-Guardia Act, 29 U.S.C. §§ 101–115, removes, in large part, the jurisdiction of the federal courts to issue injunctions in labor disputes. *See id.* § 104. At the same time, section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), allows parties to sue in federal court for breaches of collective bargaining agreements. Clarifying the relationship between these seemingly conflicting statutes, the Supreme Court in *Boys Markets, Inc. v. Retail Clerks Union Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), held that a court may enjoin a union from striking in violation of a no-strike clause when both parties have agreed to arbitrate the issue underlying the strike. However, in *Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the court held that if the parties did not agree to arbitrate the underlying issue, a court may not enjoin the strike, even where the contract contains a no-strike clause.

This court has applied the *Boys Markets/Buffalo Forge* doctrine to a union request for an injunction against unilateral employer action to preserve the status quo pending the resolution of arbitration. In *Gulf Coast Industrial Workers' Union v. Exxon Co., U.S.A.*, 712 F.2d 161 (5th Cir. 1983), the employer threatened to withdraw approval of the union's choice of health insurer unless the union withdrew a proposed modification to the employees' health plan. *Gulf Coast*, 712 F.2d at 162. The union forced arbitration and also filed for and received a preliminary injunction restraining the company pending the outcome of arbitration from withdrawing its approval. *Id.* at 163. We vacated the injunction, holding that none should issue against employers who engage in self-help before the outcome of arbitration unless (1) the employer agreed in the collective bargaining agreement not to engage in self-help; or (2) the arbitration process to which the parties have agreed would be frustrated or rendered nugatory by the self-help measure. *Id.* at 165. In addition, we held that the traditional requirements for a preliminary injunction also must be met. *Ibid.*

Ingalls has engaged in a form of self-help by unilaterally implementing a drug testing program without the consent of the union. Except for standard no-strike, no-lockout provisions, this action is taken under a collective bargaining contract that contains no agreement to preserve the status quo pending the outcome of arbitration.

The implementation of the drug testing program prior to the completion of arbitration has not frustrated the arbitration process or rendered it meaningless. The process becomes meaningless only if any arbitral award in favor of the union would fail to undo harm occasioned by the lack of an injunction to preserve the status quo pending arbitration. For example, in *Local Lodge No. 1266, International Association of Machinists and Aerospace Workers, AFL–CIO v. Panoramic Corp.*, 668 F.2d 276 (7th Cir.1981), the company planned to sell a division that employed workers represented by the union. The purchaser refused to recognize or bargain with the union and announced that it planned to terminate all employees, and any employee wishing to continue employment would have to reapply. *Panoramic*, 668 F.2d at 278–79. The union forced arbitration, claiming that the collective bargaining agreement required that any purchaser, as a condition of sale, must assume the obligations of the labor agreement. *Id.* at 279. Panoramic refused to delay the transaction pending the outcome of arbitration. *Ibid.* The court held that to deny the injunction would present the arbitrator with a *fait accompli*, depriving him of the power to render an effective remedy in the event he agreed with the union's interpretation of the contract. *Id.* at 296; *see also Lever Bros. Co. v. International Chemical Workers Union, Local 217*, 554 F.2d 115 (4th Cir.1976) (injunction proper where company planned to relocate operations).

Courts have not granted or upheld injunctions in situations where an arbitral award in favor of the union could effectively remedy any prior harm. In *Independent Oil and Chemical Workers of Quincy, Inc. v. Procter & Gamble Manufacturing Co., Inc.*, 864 F.2d 927 (1st Cir.1988),

the company announced that it planned to restructure its work-shift scheduling policy and change the company dress code. The new plan virtually eliminated the workers' previous ability to swap shifts freely. *Independent Oil*, 864 F.2d at 928. The union simultaneously invoked arbitration procedures and filed for a preliminary injunction to preserve the status quo pending arbitration. The court held that unlike the situation in *Lever Brothers*, where the workers faced certain termination, an arbitral remedy would restore the employees to the position they occupied prior to the company action; the employees would be able to resume swapping shifts and dress as before. *Id.* at 932; *see also Amalgamated Transit Union, Division 1384 v. Greyhound Lines, Inc.*, 550 F.2d 1237, 1239 (9th Cir.) (same), *cert. denied*, 434 U.S. 837, 98 S.Ct. 127, 54 L.Ed.2d 99 (1977).

The union here argues that implementation of the plan would present the arbitrator with a *fait accompli* similar to that facing the arbitrators in *Panoramic* and *Lever Brothers*. It contends that the remedies typically available to the arbitrator—back pay, reinstatement, and rescission of the new rules—cannot redress the humiliation, damage to reputation and invasions of privacy that the new rules will engender. We disagree. Inaccurate test results or erroneous or even bad faith supervisorial accusations of drug or alcohol abuse may to some extent unjustifiably damage a worker's reputation. However, this speculative possibility of irreparable harm is not of a magnitude sufficient to conclude that traditional arbitral awards would be rendered meaningless. Many bases for discipline in the workplace can unfairly impugn the reputation of the worker implicated. One improperly accused of being an embezzler, a petty thief, or an incompetent, may suffer damage to his or her reputation comparable with that suffered by a worker improperly tested or disciplined for alcohol or drug abuse. The purely subjective and speculative difference between the stigma associated with alcohol or drug abuse and that of other serious infractions does not warrant the conclusion that the former renders arbitral remedies ineffective while the latter does not. *Cf. Southwest Airlines, supra*, 875 F.2d at 1136 (possible irreparable harm to reputation resulting from discharge pursuant to drug testing program violation insufficient to support injunction under RLA in context of "minor dispute").

The union contends that we would err and that the district court did err by relying on *Southwest Airlines*, an RLA case, to determine that the program could not cause the employees irreparable harm. Our reliance on *Southwest Airlines* is not for the purpose of importing the RLA's "minor dispute" test into a section 301 action. Rather, we refer to that case simply to support our conclusion that Ingalls' drug testing program does not carry anything approaching the level of danger to workers urged by the union here.

■ The union also contends that by implementing the plan Ingalls has violated section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793. Section 793(a) requires employers with federal contracts in excess of $2,500 to "take affirmative action to employ and advance in employment qualified individuals with handicaps...." Section 793(b) provides that any handicapped person believing that a contractor has failed to comply with section 793(a) may file a complaint with the Department of Labor, which is charged with investigating and taking appropriate action. Because section 793 provides no private right of action, the union contends that "Ingalls' violation of employees' rights under the Rehabilitation Act thus constitutes a type of irreparable harm, where subsequent arbitration cannot provide them an adequate remedy."

We reject this argument. Section 793(b) explicitly prescribes the remedy available to persons aggrieved by a contractor's violation: they must file a complaint with the Department of Labor. The grant or denial of a preliminary injunction in no way interferes with that right. The union's argument therefore fails even if Ingalls qualifies as a contractor under the Act and its drug testing program violates the Act, issues which we do not decide.

Because we hold that the arbitral process has not been rendered meaningless by the denial of the injunction, we do not reach the issue of whether the union has satisfied the traditional prerequisites for equitable relief.

## IV

The judgment of the district court denying an injunction restraining Ingalls from implementing its drug testing program pending the outcome of arbitration is

AFFIRMED.